902 A.2d 930 (2006)
387 N.J. Super. 1
Eric STOECKEL, Plaintiff-Appellant-Cross-Respondent, and
Jacqueline Stoeckel, Thomas Esposito and Karen Esposito, Plaintiffs,
v.
TOWNSHIP OF KNOWLTON, Norman Chidiac and Charles O'Connell, Defendants-Respondents, and
Ira Cohen, Defendant-Respondent-Cross-Appellant, and
Richard Fifield, Daniel Vnencheck, Richard Stein and Mulligan & Mulligan, Defendants.
Superior Court of New Jersey, Appellate Division.
Argued January 11, 2006.
Decided March 23, 2006.
Amended June 9, 2006.
*932 Batya G. Wernick argued the cause for appellant-cross-respondent Eric Stoeckel.
Richard P. Cushing, Clinton, argued the cause for respondent Township of Knowlton (Gebhardt & Kiefer, attorneys; Mr. Cushing and Leslie A. Parikh, on the brief).
Meredith Kaplan Stoma argued the cause for respondent-cross-appellant Ira Cohen (Morgan, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski, attorneys; Ms. Stoma, of counsel; Jeffrey S. Leonard, Livingston, on the brief).
David A. Ward argued the cause for respondent Norman Chidiac (Fox & Fox, attorneys; Mr. Ward, of counsel and on the brief).
Diana C. Manning argued the cause for respondent Charles V. O'Connell (Bressler, Amery & Ross, attorneys; Ms. Manning and Marie Saraceni, Florham Park, on the brief).
Before Judges STERN, PARKER and C.L. MINIMAN.
*931 The opinion of the court was delivered by
C.L. MINIMAN, J.S.C. (temporarily assigned).
Plaintiff Eric Stoeckel appeals from summary judgment orders entered on February 4, 2000, June 10, 2002, July 16, 2003, and February 6, 2004, which disposed of all claims as to all parties.[1] Defendant Ira Cohen cross-appeals from denial of his motion to strike the opinion of plaintiff's expert as an inadmissible net opinion.
This is an action against the Township of Knowlton for inverse condemnation and violations of 42 U.S.C. § 1983. Plaintiff also alleges claims of legal malpractice,[2] as well as negligence and misrepresentation,[3] against the remaining defendants, all of *933 whom are attorneys. We affirm the dismissal of all claims except for those against defendants Ira Cohen and Norman Chidiac. Because the claims against the professionals were dismissed on summary judgment, we view the facts in the light most favorable to plaintiff and draw all reasonable inferences in his favor. Brill v. Guardian Life Ins. Co., 142 N.J. 520, 540, 666 A.2d 146 (1995).[4]

I.
We set forth only the facts relevant to the claims of plaintiff Eric Stoeckel ("plaintiff"). In 1989 Eric Stoeckel, Jacqueline Stoeckel, Thomas Esposito, and Karen Esposito purchased two building lots in an approved subdivision in the Township of Knowlton. Defendant Ira Cohen represented the Stoeckels when they purchased a building lot on Bridge Lane in the Courtland Estates subdivision. Plaintiff intended to build a house on the lot. At the time of the closing, the road had not been built and the utilities had not been installed. Plaintiff knew the developer had been given a year to complete the road, but he was not aware that the security supplied by the builder to the township was a letter of credit that would expire at the end of a year.
While under the belief that a bond secured completion of the road, plaintiff received many and various assurances from the township over the years that Bridge Lane would be completed. For example, some time shortly after August 1990, plaintiff asked Jessie Thompson, a member of the planning board and the zoning subcommittee, about the completion of Bridge Lane. Plaintiff was told that the developer had been given a one-year extension, which Thompson later claimed was an assumption on his part. The letter of credit had already expired in July 1990. Plaintiff, believing that the one-year extension would continue through July 1991, contacted Thompson and demanded that the township take the bond and complete the road. Nothing happened. Toward the end of 1991, plaintiff contacted Thompson again and was advised that the township had lost the bond. Plaintiff was not yet alarmed because he believed that the bond money was still available and that the township was obligated to complete the road.
Plaintiff attended a planning board meeting in January 1992 to see what the problem was. He related what Thompson had told him to the board and asked why Bridge Lane was not being built. He was advised that they were having a problem with the developer, and that they did not know where the bond money was. Township attorney Charles O'Connell was present at this meeting. Although he knew that there was no bond and that the letter of credit had expired, he did not correct the information that was supplied to plaintiff. Plaintiff was still not alarmed because he believed that the township was obligated to build the road even if it lost the bond money. A month or two later, plaintiff called Thompson again and was told that Bridge Lane would be built in the summer, but they had to do work on another road in Courtland Estates first.
Toward the end of 1992, plaintiff once again called Thompson and was told that the township could not complete Bridge Lane yet because there was no money in the budget. In the meantime, the other Courtland Estates roadwork was completed by the township. Thompson told plaintiff *934 that he could contact the electric company to get electricity extended to the lot and that Thompson would give plaintiff a special permit to start building. Expecting the township to pay for the installation of electricity, he got a price and relayed it to Thompson. Thompson replied that the township did not have the money in the 1992 budget, and that plaintiff would have to wait until 1993.
Frustrated with the township's delay, plaintiff consulted with Cohen in March 1993. Relating the above history and complaining that he could still not build his house, plaintiff asked Cohen about the bond. Cohen promised to investigate and get back to him. A few weeks later Cohen sent plaintiff a letter telling him that he could not force the township to build the road. The following month, plaintiff sought a second opinion from defendant Norman Chidiac. Chidiac opined that plaintiff could sue Cohen, but he did not know if there was a basis to sue the township. Plaintiff instructed Chidiac to sue whomever he could to get the road constructed. By the end of 1994, Chidiac still had taken no action.
Late in 1994 plaintiff spoke with the township's deputy mayor, who said that the township was going to get the developer's bank to build the road. He suggested that plaintiff agree to let the township switch his lot for one on Poppies Lane, a road that had been completed in Courtland Estates, which by that time was held by the developer's bank in foreclosure. Plaintiff turned to yet another attorney, Richard Fifield, at the beginning of 1995 for advice on his options. It was not until September 1995 that Fifield advised plaintiff that his best option was to switch properties, as the deputy mayor had suggested. Plaintiff immediately selected a lot on Poppies Lane. Unfortunately, a dispute between the developer's bank and the township over unpaid taxes derailed this resolution, but not until more time elapsed.
Dissatisfied with Fifield, plaintiff returned to Chidiac in February 1996. Chidiac promptly advised plaintiff that the developer's bank would not agree to the property swap. Plaintiff again pressed Chidiac to sue, but Chidiac continued to attempt an amicable resolution. Early in 1997 plaintiff approached the township again to inquire about the status of the property swap, but he was told by the new township attorney that he knew nothing about it. This led plaintiff in June 1997 to go to the township offices to review its records. It was then that plaintiff learned for the first time that there had only been a letter of credit and that the township had let it expire in July 1990. He returned to Chidiac, who advised plaintiff that he had a damages claim against the township. Plaintiff instructed him to sue. Chidiac again took no action, and plaintiff retrieved his file in February or March 1998 and brought it to his current attorneys, who filed this action in July 1998.

II.
The initial complaint was against only the Township of Knowlton, which removed the action to federal court in light of the § 1983 claims.[5] Plaintiff then amended the complaint to allege claims of malpractice against Cohen, Chidiac and Fifield. The township filed a motion for summary judgment. The federal judge dismissed the claims against the Township of Knowlton, finding that the property's value had *935 not been sufficiently diminished to support an inverse condemnation claim. She also found that the statute of limitations barred the § 1983 claims. An order of dismissal was entered as to the Township of Knowlton on July 13, 1999. The remaining claims were remanded to state court because federal question jurisdiction no longer existed; the parties consented to the remand.
First Cohen and then Chidiac sought and were granted summary judgment. Cohen filed a summary judgment motion in August 2001 in which he argued that the Stoeckels failed to establish any duty that Cohen breached in representing them in 1989 because their expert's opinion violated the net opinion rule, relying on Kaplan v. Skoloff & Wolfe, P.C., 339 N.J.Super. 97, 103, 770 A.2d 1258 (App.Div.2001). He further argued that they could not prove their "case within a case" with respect to the March 1993 representation because the Federal District Court found that the township had not violated any of the Stoeckels' constitutional rights and, even if they had such a viable claim, Chidiac's negligence superseded that of Cohen because the statute of limitations did not become a bar until well after 1993.
Cohen's motion was denied on November 14, 2001, on the ground that material issues of fact precluded summary judgment, that a Lopez hearing[6] was required, that the expert opinion was not net, and that the Federal District Court decision did not preclude a finding that there were viable § 1983 and tort claims against the township. A subsequent motion for reconsideration was heard by another judge in May 2002. He affirmed the earlier ruling on the net opinion issue, but concluded that the Stoeckels had no viable claims against the township in 1993 when they consulted Cohen. In signing the order granting summary judgment to Cohen, the reconsideration judge dismissed all claims against Cohen, rather than just the claims predicated on the 1993 representation.
Following the June 10, 2002, grant of summary judgment to Cohen, all four plaintiffs were permitted to amend their complaint for a second time to state claims against the municipal attorney, Charles O'Connell. Plaintiff alleged that O'Connell breached a duty to plaintiff in failing to advise the township of the risks and consequences inherent in the use of a letter of credit, in failing to oversee the township's monitoring and redeeming of the letter of credit, and in failing to monitor and demand payment of the letter of credit if the township did not do so. Plaintiff also alleged that O'Connell made a misrepresentation when he failed to correct the statement that the township was "looking for a bond" and that there was no reason for concern.
Relying on the earlier ruling on the reconsideration motion, Chidiac moved for summary judgment in June 2003. The Stoeckels again opposed the motion, arguing that the § 1983 claim expired while they were being represented by Chidiac. Yet a third state court judge granted Chidiac's motion for the reasons expressed by the reconsideration judge.
On February 6, 2004, plaintiff's claims against O'Connell were dismissed by the same judge under the notice provisions of the Tort Claims Act. The judge found that no notice of claim was given. He also found that all of the alleged conduct was within the scope of O'Connell's duties as township attorney. He found that the position of township attorney made O'Connell an employee of the township, and that he *936 was immune from suit under the Tort Claims Act.

III.
Plaintiff seeks review here of the federal court decision to dismiss the claims against the Township of Knowlton. This presents a threshold issue of appellate jurisdiction. Plaintiff contends that we can review the merits of the federal judge's decision because the state court relied upon that decision in entering another order of dismissal on February 4, 2000. He also argues that the decision in the United States District Court could not be appealed to the Third Circuit because the action was still pending in state court. He urges that the case of Zacharias v. Whatman, PLC, 345 N.J.Super. 218, 784 A.2d 741 (App.Div. 2001), supports our review of the federal court's decision.
In Zacharias the plaintiff appealed from the dismissal of his age-discrimination case against his employer in state court. The employer had removed the action to federal court based on diversity of citizenship. 345 N.J.Super. at 220-21, 784 A.2d 741. Plaintiff then filed an amended complaint in federal court adding additional parties and destroying diversity jurisdiction, but the Federal District Court dismissed the claims against the additional parties on statute of limitations grounds. Id. at 221, 784 A.2d 741. Two years later the district court dismissed the action against the employer for lack of subject matter jurisdiction. Id. at 222, 784 A.2d 741. Zacharias then filed an amended complaint in state court under the original docket number, taking the dismissal as tantamount to a remand. Ibid. The employer filed a notice of removal and plaintiff moved for a remand, which was granted based on the earlier dismissal. Id. at 222-23, 784 A.2d 741. The state court judge dismissed the claims against all defendants except the employer based on the federal court's first decision, and dismissed as to the employer because the complaint failed to state a cause of action and was filed without leave of court. Id. at 223-24, 784 A.2d 741.
Plaintiffs appealed, and we considered whether the trial court was bound by the federal court's decision to dismiss all parties other than the employer:
[I]t is first clear that once the federal judge determined that he had no subject-matter jurisdiction, any prior substantive rulings by him became a nullity, were retroactively vitiated, and, as such, were obviously not binding on the state court judge. See Am. Fire & Cas. Co. v. Finn, 341 U.S. 6, 18, 71 S.Ct. 534, 542, 95 L.Ed. 702, 710-11 (1951), Brown v. Francis, 75 F.3d 860, 864 (3d.Cir.1996).
[Id. at 226-27, 784 A.2d 741.]
The Federal District Court here, unlike Zacharias, never concluded that it did not have subject-matter jurisdiction over the action. Rather, it always had jurisdiction over the federal question and decided the issues respecting those claims against the Township of Knowlton. Then and only then did it remand the non-federal claims to the state court.
Defendants argue that this court has no jurisdiction to review the factual findings, legal conclusions, opinion and order of the federal court despite the state court's February 4, 2000, order implementing that dismissal. They urge that the federal order became a final judgment upon remand of the balance of the case and could have been reviewed by the Third Circuit.
This issue was addressed by the United State Supreme Court early in the twentieth century. In Waco v. U.S. Fid. & Guar. Co., 293 U.S. 140, 55 S.Ct. 6, 79 L.Ed. 244 (1934), a state court action was removed to the Federal District Court, which dismissed the action against one *937 party and then remanded the case to the state court because diversity jurisdiction no longer existed. Id. at 141-42, 55 S.Ct. at 6, 79 L.Ed. at 244-45.
The plaintiff appealed from the dismissal of its action against the one party, but the Circuit Court of Appeals held that no appeal can lie from an order of remand. Id. at 142, 55 S.Ct. at 7, 79 L.Ed. at 245.
The Supreme Court then held that while it was true that no appeal lies from an order of remand, "but in logic and in fact the decree of dismissal preceded that of remand and was made by the district court while it had control of the cause. Indisputably this order is the subject of an appeal; and, if not reversed or set aside, is conclusive upon the petitioner." Id. at 143, 55 S.Ct. at 7, 79 L.Ed. at 245.
We are of [the] opinion that the petitioner was entitled to have the Circuit Court of Appeals determine whether the dismissal of its cross-action against the Fidelity Company was proper. If the District Court erred on this point, which we do not decide, its action should be reversed. A reversal cannot affect the order of remand, but it will at least, if the dismissal of the petitioner's complaint was erroneous, remit the entire controversy, with the Fidelity Company still a party, to the state court for such further proceedings as may be in accordance with law.
[Id. at 143-44, 55 S.Ct. at 7, 79 L.Ed. at 245-46.]
Despite the subsequent enactment of 28 U.S.C.A. § 1291 in 1940 and the adoption of Fed.R.Civ.P. 54, Waco has continuing vitality. Carr v. Am. Red Cross, 17 F.3d 671, 675 (3d Cir.1994). Where an order is "logically precedent to, and separable from, the remand decision," as where a dismissal order impacts "on more than the issue of federal subject matter jurisdiction alone," it is appealable as of right. Ibid. (holding that the dismissal of the American Red Cross was a collateral order appealable as of right to the Circuit Court of Appeals upon remand of the remaining claims to state court because federal question jurisdiction was destroyed upon dismissal of the Red Cross). See also Christopher v. Stanley-Bostitch, Inc., 240 F.3d 95, 99 (1st Cir.2001); Beneficial Consumer Co. v. Poltonowicz, 47 F.3d 91, 93 (3d Cir.1995).
Here, the federal court's dismissal of the action against the Township of Knowlton occurred while the district court had control of the case. When the balance of the action was remanded to state court, the dismissal as to the township became appealable as of right to the Third Circuit. We may not review the merits of the district court's decision; it is entitled to preclusive effect. Velasquez v. Franz, 123 N.J. 498, 511-12, 589 A.2d 143 (1991). The order of February 4, 2000, implementing that final decision was properly entered. Although the district court's decision is not subject to review by a state appellate court, the preclusive effect of that decision must be considered in evaluating the balance of the plaintiff's claims of error relating to the dismissal of Cohen, Chidiac and O'Connell.

IV.
Plaintiff alleged that in 1989 Cohen was negligent in that he failed to properly investigate the security provided to the town, failed to advise plaintiff about the security so that he could properly protect his interests in the property, and failed to counsel him about the implications of purchasing the lot with the road incomplete.
The first state court judge to consider Cohen's motion for summary judgment found that the expert's opinion was not a net opinion. The second judge determined *938 that Cohen had failed to meet his burden on reconsideration to demonstrate that the first court's decision was based on plainly incorrect reasoning or that the court failed to consider evidence or that there was good reason to consider new evidence. Cummings v. Bahr, 295 N.J.Super. 374, 384-85, 685 A.2d 60 (App.Div.1996). As a consequence, the second judge refused to reconsider the net opinion issue. Despite that decision, the second judge dismissed the claims relating to the 1989 representation without further explanation. Cohen seeks to preserve the result by cross-appealing from the net opinion rulings.
To establish legal malpractice, a plaintiff must show "(1) the existence of an attorney-client relationship creating a duty of care upon the attorney; (2) the breach of that duty; and (3) proximate causation." Conklin v. Hannoch Weisman, 145 N.J. 395, 416, 678 A.2d 1060 (1996). Because the duties a lawyer owes to his client are not known by the average juror, a plaintiff will usually have to present expert testimony defining the duty and explaining the breach. Sommers v. McKinney, 287 N.J.Super. 1, 10, 670 A.2d 99 (App.Div. 1996). To be admissible as evidence, the expert's opinion must be based on standards accepted by the legal community and not merely on the expert's personal opinion. Kaplan, supra, 339 N.J.Super. at 103, 770 A.2d 1258.
Stoeckel presented an expert opinion to explain the duties of care that Cohen allegedly breached in 1989. The expert opined:
Cohen owed a duty to the plaintiff to advise him of the risks of closing title to the lot under the circumstances as existed at the time of closing. He also owed a duty to determine the full extent of the risk, to insist that a bond be posted rather than a letter of credit which would expire under its own terms, or at the very minimum to monitor the expiration date to protect the client from exactly what occurred  the expiration of the letter of credit and the loss of the security to pay for the required improvements.... Nor did defendant Cohen advise or inform his client of what had to be done to protect his interest such as obtain a copy of the bond or letter of credit and to monitor the actions of the township concerning the performance of the developer or of the township in completing the improvement using the posted security.
The expert opined that those duties arose from Cohen's general duty to exercise that degree of care, knowledge, judgment and skill that a reasonably prudent lawyer of ordinary ability would have exercised in the same or similar circumstances, relying on St. Pius X House of Retreats v. Camden Diocese, 88 N.J. 571, 588, 443 A.2d 1052 (1982), and Lamb v. Barbour, 188 N.J.Super. 6, 12, 455 A.2d 1122 (App. Div.1982), certif. denied, 93 N.J. 297, 460 A.2d 693 (1983), and on R.P.C. 1.4, which provided in 1989 that:
(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.
(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.
[R.P.C. 1.4.[7]]
In denying Cohen's summary judgment motion, the first state court judge noted that the expert relied on seven depositions and a dozen exhibits, an attorney's duty to *939 exercise due care and adequately advise his client, and on R.P.C. 1.4. He found that a violation of those rules is evidence of legal malpractice, relying on Baxt v. Liloia, 155 N.J. 190, 200, 714 A.2d 271 (1998). Finally, he concluded that the opinion was clearly supported by factual evidence, which, if true, demonstrated a violation of the tenets of the Rules of Professional Conduct. Cohen argues that this decision was erroneous, relying on Kaplan, supra, 339 N.J.Super. 97, 770 A.2d 1258.
In Kaplan the expert ventured an opinion that a property settlement agreement did not provide the client with the alimony, child support, equitable distribution, and counsel fees, among other things that she ought to have received in settlement. Id. at 100, 770 A.2d 1258. Because that expert did not offer any evidential support to establish the existence of a standard of care respecting settlement of divorce actions, we affirmed the trial court's conclusion that the expert had presented an inadmissible net opinion. Id. at 103, 770 A.2d 1258. Specifically, the expert had
failed to render a comparison of similar property settlement agreements, other than one anecdotal reference to a case he had recently handled. Moreover, he failed to provide an analysis of how legal issues would have affected the settlement amount.
In the final analysis, [the] opinion can be reduced to the bald assertion that if he had represented plaintiff, he could and would have effectuated a more favorable settlement on her behalf. Even if that were so, that does not establish a standard by which to judge defendants' conduct.
[Id. at 104, 770 A.2d 1258.]
This case is a far cry from Kaplan. Here, the expert's opinion was based on the facts of record, to which he applied generally accepted standards of care. Those standards are reflected in our case law and in the Rules of Professional Conduct. St. Pius X House of Retreats, supra, 88 N.J. at 588, 443 A.2d 1052; R.P.C. 1.4. To satisfy those duties, Cohen at the very least had to advise his client of the risks of closing on a lot in a development where the street had not been constructed and no utilities served the lot. The claims made against Cohen have adequate support in the record to demand a trial on all issues respecting his representation of plaintiff in 1989.
We turn to the dismissal of the claims against Cohen respecting his representation of plaintiff in March 1993. The first state court judge held that there were allegations that might, if believed, present a cause of action against the municipality for matters other than inverse condemnation and a § 1983 civil rights action. He pointed to the Stoeckels' allegation that the township and its officials had a duty to speak up and advise him that the letter of credit had become worthless and explain that that was why the road had not been built. He concluded that the case-within-a-case issue could not be resolved in favor of Cohen. The second state court judge on reconsideration decided otherwise.
Initially, we note that the second state court judge failed to find that Cohen met his burden to demonstrate that the decision of the first state court judge was plainly incorrect or that the first judge failed to consider evidence. Cummings, supra, 295 N.J.Super. at 384-85, 685 A.2d 60. As a consequence, the second judge improperly reached the merits of the alleged malpractice based on the lost § 1983 claims.
He concluded that the Stoeckels could not prevail on their § 1983 claims because the Federal District Court had dismissed their inverse condemnation claims on the *940 ground that the diminution in value of their property was caused by the developer and not the township. He reasoned that in order to prevail on a § 1983 claim, "plaintiffs must prove (1) the existence of a violation of a right secured by the Constitution or laws of the United States and (2) that the conduct complained of was committed by a person acting under the color of state law," citing West v. Atkins, 487 U.S. 42, 48, 108 S.Ct. 2250, 2254-55, 101 L.Ed.2d 40, 48-49 (1988). Because their inverse condemnation claim had been dismissed on the merits, the judge concluded that there was no violation of a right secured by the Constitution or law of the United States.
The second state court judge also concluded that plaintiffs' § 1983 claims based on state law were not viable in the first instance because they had failed to demonstrate that they suffered any harm caused by an official policy, relying on City of Canton v. Harris, 489 U.S. 378, 385, 109 S.Ct. 1197, 1203, 103 L.Ed.2d 412, 424 (1989). This was so because they had not alleged "[a] persistent widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is common and well settled as to constitute a custom that fairly represents municipal policy," citing Shelton v. College Station, 754 F.2d 1251, 1257 (5th Cir.1985). The judge also found that there was no single policy decision generated by a policy-making official nor a deliberate indifference on the part of the township or its policy-making officials that could be identified to support a § 1983 claim. Finding that the township never adopted a resolution or ordinance in which it committed to complete the improvements to Bridge Lane, the plaintiffs could not have prevailed in an action against it, rendering the legal malpractice claim not viable. He also found that other state law claims were barred by the immunities preserved by the Tort Claims Act, N.J.S.A. 59:2-4, 3-3, 3-5.
We are cognizant of the fact that the Federal District Court did not address the merits of the § 1983 action at all, finding only that it was time-barred. That court did, however, finally resolve the issue of inverse condemnation and it is no longer an issue in this case. However, the § 1983 claim is distinct from the inverse condemnation claim. A plaintiff can establish a policy that denies a constitutional right in a variety of ways. In Bair v. City of Atlantic City, 100 F.Supp.2d 262, 267-68 (D.N.J.2000), the court described how this may be done:
Official policy may arise in different contexts, including "a single decision by municipal policymakers under appropriate circumstances." Pembaur v. City of Cincinnati, 475 U.S. 469, 480, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). Liability may rest upon "a course of action tailored to a particular situation and not intended to control decisions in later situations" where "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Id. at 481-82, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452.
A municipality's failure to act may also constitute municipal policy where the municipality has knowledge of the need for action and the failure to act rises to the level of "deliberate indifference" which causes a constitutional injury. City of Canton v. Harris, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).
Here, a "policy" to deny plaintiff his property rights might reasonably be found from the township's failure to draw *941 down on the one-year letter of credit, in failing to request an extension and confirm that it was granted, and in concealing the loss of the letter of credit for an extended period of time.[8] Cohen, however, argues that even if Stoeckel can establish a policy, he cannot show that the conduct was so egregious that it may fairly be said to shock the conscience, as required by United Artists Theatre Circuit, Inc. v. Twp. of Warrington, 316 F.3d 392, 400 (3d Cir.), rehearing denied, 324 F.3d 133 (3d Cir. 2003). This is an issue for a jury, which might reasonably conclude that the conduct of the township rises to that level.
The second trial court judge also found that there was no triable issue under the Tort Claims Act, citing N.J.S.A. 59:2-4, 3-3, 3-5. N.J.S.A. 59:2-4 provides that "[a] public entity is not liable for any injury caused by adopting or failing to adopt a law or by failing to enforce any law." N.J.S.A. 59:3-3 provides in part that "[a] public employee is not liable if he acts in good faith in the execution or enforcement of any law." And, N.J.S.A. 59:3-5 provides that "[a] public employee is not liable for an injury caused by his adoption of or failure to adopt any law or by his failure to enforce any law."
Stoeckel contends that his claims are not predicated upon the adoption or enforcement of any law or the failure to do so. Rather, he claims that his cause of action is based on the conduct of the township and township officials in allowing the letter of credit to expire and then in misrepresenting that fact to him.
The record does not support a conclusion as a matter of law that the municipal clerk and other township employees were acting in good faith when they failed to draw down the letter of credit in disregard of the very likely and substantial injury to owners of lots in the subdivision if roads were not built. The public employee must demonstrate that his conduct was objectively reasonable and that he behaved with subjective good faith. Alston v. City of Camden, 168 N.J. 170, 186-87, 773 A.2d 693 (2001). We have held that the question of "good faith" under N.J.S.A. 59:3-3 is generally a fact question to be resolved by a jury. Kelty v. State, Dep't of Law and Public Safety, Div. of State Police, 321 N.J.Super. 84, 94, 728 A.2d 273 (App. Div.1999). Surely, we cannot say that the actions of municipal officials in this case were objectively reasonable as a matter of law. To the extent that the officials may be liable, so, too, may the township. N.J.S.A. 59:2-2(a). Similarly, if this claim is based on actual fraud, actual malice, or willful misconduct and was outside the scope of employment, there is also no immunity for it. N.J.S.A. 59:3-14.
The fact that the Stoeckels consulted with Norman Chidiac after they sought counsel from Cohen in 1993 does not necessarily break the chain of causation when he too failed to act on their behalf. He did not advise plaintiff in 1993 of his rights and the remedies available to him. Had he done so, the chain of causation might have been broken when the Stoeckels consulted with Chidiac. With Chidiac, too, failing to properly advise them of their rights, a jury could reasonably conclude that the negligence of Chidiac combined with, rather than superseded, the negligence of Cohen.
Chidiac's entitlement to summary judgment rises and falls with that of Cohen. The third state court judge granted summary judgment to Chidiac on the strength of the second state court judge's conclusion that the Stoeckels could not prove their *942 case within a case. Having reversed that conclusion, the summary judgment in favor of Chidiac must be reversed as well.

V.
Plaintiff also appeals from the summary judgment granted to O'Connell. The trial court found that plaintiff failed to give notice of claim under the Tort Claims Act, barring his right to proceed. It is undisputed that no notice of claim was given. The trial court also found that all of the alleged conduct was within the scope of O'Connell's duties as township attorney, and, as a consequence, O'Connell was immune from suit under the Tort Claims Act as an employee of the township.
First, plaintiff contends that O'Connell owed him a separate, independent duty outside the scope of O'Connell's employment by the township, relying on Petrillo v. Bachenberg, 139 N.J. 472, 479, 655 A.2d 1354 (1995), and Davin, L.L.C. v. Daham, 329 N.J.Super. 54, 74-78, 746 A.2d 1034 (App.Div.2000). As a consequence, notice of claim was not required and O'Connell is not immune from liability. Second, even if O'Connell enjoys immunity under the Tort Claims Act, plaintiff asserts that O'Connell acted outside the scope of his duties as counsel to the township when he made affirmative misrepresentations to plaintiff, triggering the exception to immunity found in N.J.S.A. 59:3-14(a).
Turning to plaintiff's first contention, we are not persuaded that any duty O'Connell might have owed to plaintiff was outside the scope of O'Connell's employment by the Township of Knowlton. The Legislature has declared that "public entities shall only be liable for their negligence within the limitations of this act and in accordance with the fair and uniform principles established []in [this act]." N.J.S.A. 59:1-2. In addition, "[a] public employee is not liable for an injury where a public entity is immune from liability for that injury." N.J.S.A. 59:3-1(c). The Tort Claims Act is intended to broadly limit public entity immunity. Alston v. City of Camden, 168 N.J. 170, 176, 181, 773 A.2d 693 (2001); Brooks v. Odom, 150 N.J. 395, 401-02, 696 A.2d 619 (1997). By virtue of N.J.S.A. 59:3-1(c), the Act is also intended to broadly limit public employee immunity. Because all of the acts upon which plaintiff relies for the imposition of liability on O'Connell occurred while O'Connell was rendering services to the township, we hold that the Tort Claims Act must be applied to all of the claims made by plaintiff in order to determine whether notice was or was not required and whether O'Connell is or is not immune from liability.
Plaintiff argues, however, that O'Connell is not entitled to the procedural benefits that pertain to municipal entities under the Tort Claims Act, citing Martin v. Twp. of Rochelle Park, 144 N.J.Super. 216, 221, 365 A.2d 197 (App.Div.1976) (applying the notice requirements to the public entity only and holding that the general six-year statute of limitations governed claims against a township attorney rather than the shorter limitations period of the Tort Claims Act).
At the time we decided Martin, public employees did not have the protection of the notice provisions of the Tort Claims Act nor did they have immunity when the public entity was immune. Rather, public employees were liable for injury caused by their act or omission to the same extent as a private person unless immune under N.J.S.A. 59:3-2(a), 59:3-3 and 59:3-6. However, with the passage of the 1994 amendments to the Tort Claims Act, public employees were included in the procedural protections accorded by N.J.S.A. 59:8-3, -8, -9 and -10(c) and their immunity *943 was extended to the breadth of immunity afforded public entities.
After the Tort Claims Act was amended in 1994, we were divided on the issue of whether the notice provisions applied to claims of tortious intentional conduct, which was excluded from immunity by N.J.S.A. 59:3-14. Compare Velez v. City of Jersey City, 358 N.J.Super. 224, 239-40, 817 A.2d 409 (App.Div.2003), reversed, 180 N.J. 284, 850 A.2d 1238 (2004), and Bonitsis v. New Jersey Inst. of Tech., 363 N.J.Super. 505, 516-20, 833 A.2d 679 (2003). When the Supreme Court reversed our holding in Velez, it concluded that notice of tort claim was required even where the conduct was intentional. Velez, supra, 180 N.J. at 293, 817 A.2d at 1244. However, the Court then considered the issue of whether its ruling should be applied retroactively or prospectively only with respect to the notice requirement. Id. at 296, 817 A.2d at 1245-46. It held:
A new rule of law is created when, in a case of first impression, "a plaintiff `reasonably relie[s] on a plausible, although incorrect, interpretation of the law'" .... Here, plaintiff reasonably believed that N.J.S.A. 59:3-14a precluded application of the notice requirements to this case. The reasonableness of plaintiff's view is demonstrated by the fact that two panels of our Appellate Division came to opposite conclusions when reviewing this issue. Because this is a case of first impression before our Court and in view of the uncertainty of this issue, the "interests of justice will better be served by prospective application of our decision."
Accordingly, we hold that this decision will be applied prospectively to all similar causes of action accruing after the date of this opinion [June 29, 2004].
[Id. at 297, 817 A.2d 409 (citations omitted).]
To summarize, notice of claim is not required at all when the cause of action accrued prior to the effective date of the 1994 amendment to N.J.S.A. 59:8-3, i.e., July 1, 1994. Thereafter, notice of claim was required for causes of action accruing on or after July 1, 1994, for all claims other than ones alleging tortious intentional conduct by a public employee. However, as to the latter, notice of claim is required for causes of action accruing after June 29, 2004.
We previously held in Martin that the six-year statute of limitations applied to claims against a publicly employed attorney. However, since then N.J.S.A. 59:8-8 and -9 were amended effective July 1, 1994, to expressly require the presentation of claims against public employees within two years, failing which the claims would be forever barred. As a result of these amendments and the Velez decision, our conclusion in Martin must be modified. We hold that the six-year statute of limitations found in N.J.S.A. 2A:14-1 applies to all claims against publicly employed attorneys which accrued prior to July 1, 1994. That limitations period continues to apply to causes of action for tortious intentional conduct by a publicly employed attorney which accrued prior to June 29, 2004. All other causes of action against publicly employed attorneys which accrued on or after July 1, 1994, are subject to the two-year statute of limitations.
Here, the complaint was amended to state claims against O'Connell on September 18, 2002. Plaintiff acknowledges that he became aware of his claims against O'Connell sometime in 1997, although that timing is disputed by O'Connell. As a consequence, all claims against O'Connell except for tortious intentional conduct are barred by the statute of limitations in the Tort Claims Act. N.J.S.A. 59:8-8, -9. As to tortious intentional conduct, the trial court *944 must conduct a Lopez hearing to determine when plaintiff first learned that he had such a claim and then apply the six-year statute of limitations to determine whether the claims are barred. If they are not, those claims based on the evidence before the court are sufficient to require trial by jury.
Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.
NOTES
[1] Plaintiffs Thomas and Karen Esposito and Jacqueline Stoeckel have not filed an appeal.
[2] These claims are against defendants Ira Cohen, Esquire; Norman Chidiac, Esquire; Richard Fifield, Esquire; Daniel Vnencheck, Esquire; Richard Stein, Esquire; and Mulligan & Mulligan.
[3] These claims are against Charles O'Connell, Esquire.
[4] The dismissal of the claims against the Township of Knowlton involves purely a question of law at this time.
[5] Section 1983 "creates a remedy for the violation of rights found in the Constitution and elsewhere in federal law." Loigman v. Twp. Comm. of Middletown, 185 N.J. 566, 577, 889 A.2d 426 (2006) (citing Oklahoma City v. Tuttle, 471 U.S. 808, 816-17, 105 S.Ct. 2427, 2432, 85 L.Ed.2d 791, 799-800 (1985)).
[6] Lopez v. Swyer, 62 N.J. 267, 274-75, 300 A.2d 563 (1973).
[7] Adopted July 12, 1984, effective September 10, 1984; new paragraphs (a) and (d) adopted and former paragraphs (a) and (b), as they appeared in 1989, redesignated as paragraphs (b) and (c) November 17, 2003, to be effective January 1, 2004.
[8] In addition, the township purchased the lots surrounding that of Stoeckel and rezoned them as farmland preservation, which Stoeckel contends precluded development of his lot.