**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1730-19

ROSETTA MASON, as executrix
and administratrix of the estate of
THOMAS MASON,

     Plaintiff-Appellant,

v.

BLAKE BERENBAUM,
ESQUIRE, RICHMAN,
BERENBAUM & ASSOCIATES,
LLC, MARIO J. PERSIANO,
ESQUIRE, and THE LAW
OFFICES OF MARIO J.
PERSIANO,

     Defendants-Respondents.

_____

MARIO J. PERSIANO, ESQ., THE
LAW OFFICES OF MARIO J.
PERSIANO,

     Third-Party Plaintiffs,

v.

BLAKE BERENBAUM, ESQ.,
and RICHMAN, BERENBAUM &

ASSOCIATES, LLC,

Third-Party Defendants.

Argued January 27, 2022 – Decided April 1, 2022

Before Judges Alvarez and Haas.

On appeal from the Superior Court of New Jersey, Law Division, Cumberland County, Docket No. L-0089-18.

Louis M. Barbone argued the cause for appellant (Jacobs & Barbone, PA, attorneys; Louis M. Barbone, on the brief).

Joseph R. Lang argued the cause for respondents Mario J. Persiano and The Law Offices of Mario J. Persiano (Lenox, Socey, Formidoni, Giordano, Lang, Carrigg & Casey, attorneys; Joseph R. Lang and Michael A. Pattanite, on the brief).

Blake Berenbaum, respondent, argued the cause pro se.

PER CURIAM

Thomas Mason died on September 22, 2013, after protracted unsuccessful treatment of a severe infection to his left foot and leg. Plaintiff Rosetta Mason, his wife, sued the treatment providers. Those medical defendants were gradually dismissed from the case; eventually the complaint itself was dismissed in its entirety. Some defendants were dismissed because plaintiff failed to file an adequate affidavit of merit, and others for lack of prosecution. Following

those dismissals, plaintiff filed a malpractice case against Blake Berenbaum, Esquire, Richman, Berenbaum, & Associates, LLC, Mario J. Persiano, Esquire, and the Law Offices of Mario J. Persiano.

The judge who dismissed the legal malpractice case found fatal flaws in the expert's report in the underlying medical malpractice case. That expert—who practiced internal medicine and infectious disease—was qualified to opine as to the standard of care related to only two defendants. The affidavit of merit did not specify which records the doctor reviewed, nor identify which physicians provided inadequate treatment. Although the expert opined that the providers administered "sub[]standard attention to [decedent's] diabetic control[,]" the affidavit did not indicate the nature of that substandard attention. It did not set forth a deviation from a standard of care. Additionally, the expert's opinion did not suffice to carry the claim beyond summary judgment. In order to prevail in the legal malpractice case, plaintiff had to prove a case within a case. Thus, the failure to obtain a sufficient medical malpractice expert report fatally undermined the medical malpractice claim.

Furthermore, plaintiff tried to move forward relying on the common knowledge doctrine and argued he did not need a legal expert report. The judge disagreed, finding the attorneys' shortcomings were not self-evident to the

3

average juror. She ruled an expert's report was necessary to both establish a standard of care and a deviation. She further stated the average juror would not know "which medical malpractice defendant should have been named . . . in a medical malpractice case . . . [or] to understand what records in a medical malpractice case . . . an attorney should have obtained before filing suit[.]" An expert report was required to identify the deviation from accepted legal standards for pursuit of a medical malpractice claim.

Plaintiff now claims the following errors were committed by the court:

POINT I

THE MOTION JUDGE ERRED AS A MATTER OF LAW IN ORDERING SUMMARY JUDGMENT BASED UPON THE ALLEGED "INSUFFICIENCY" OF PLAINTIFF'S MEDICAL EXPERT REPORT; THAT ISSUE WAS NOT BEFORE THE COURT ON SUMMARY JUDGMENT AND THERE WAS NO PROPER SUMMARY JUDGMENT RECORD ON THE ISSUE PURSUANT TO R. 4:46-2.

POINT II

THE MOTION JUDGE ERRED AS A MATTER OF LAW IN GRANTING DEFENDANT[S'] SUMMARY JUDGMENT BECAUSE NO LEGAL EXPERT REPORT WAS PRODUCED BY THE PLAINTIFF.

4

I.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 528-29 (1995) (quoting R. 4:46-2(c)). Disputed facts "of an insubstantial nature" cannot defeat a summary judgment motion. Ibid. (quoting Judson v. Peoples Bank & Tr. Co., 17 N.J. 67, 75 (1954)). A genuine issue of material fact exists when "the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Id. at 540. Appellate courts review summary judgment rulings de novo. Conley v. Guerrero, 228 N.J. 339, 346 (2017).

First, it is clear that plaintiff's expert report was legally insufficient. As an inadmissible "net opinion," it could not withstand an application for summary judgment in the medical malpractice case. See Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 372 (2011); Creanga v. Jardal, 185 N.J. 345, 360

A-1730-19

(2005); <u>Arroyo v. Durling Realty, LLC</u>, 433 N.J. Super. 238, 244 (App. Div. 2013).

The timeliness of the report's submission is not dispositive. Plaintiff's argument that the court was not entitled to consider the deficiencies in the medical expert report because defense counsel did not make the point does not carry the day. No case or rule is cited in support of the proposition. A judge has an obligation to apply relevant law whether cited by counsel or not. Here, that obligation included assessing the viability of the medical report and finding it to be a net opinion. The expert was unqualified to opine as to several of the treatment providers, did not identify the records he reviewed or the bases for his conclusions, and failed to specify which defendants had performed deficiently. Thus, had the matter proceeded as a trial within a trial, plaintiff would not have been able to succeed on the merits.

## II.

Legal malpractice suits are grounded in negligence law and require three elements: "(1) the existence of an attorney-client relationship creating a duty of care by the defendant attorney, (2) the breach of that duty by the defendant, and (3) proximate causation of the damages claimed by the plaintiff." <u>McGrogan v. Till</u>, 167 N.J. 414, 425 (2001); <u>Jerista v. Murray</u>, 185 N.J. 175, 190-91 (2005).

Litigation attorneys owe certain obligations to their clients, such as "investigating the facts, formulating a litigation strategy[,] and filing within a reasonable time any action necessary to effectuate recovery." Brizak v. Needle, 239 N.J. Super. 415, 430 (App. Div. 1990) (quoting Passanante v. Yormark, 138 N.J. Super. 233, 239 (App. Div. 1975)).  In Brizak, this court held a jury could conclude "that an attorney who has been retained in a personal injury matter has a duty to conduct an investigation of his client's claim."  Ibid.

Most commonly, legal malpractice plaintiffs must litigate a "suit within a suit" by presenting "evidence that would have been submitted at a trial had no malpractice occurred."  Garcia v. Kozlov, Seaton, Romanini & Brooks, P.C., 179 N.J. 343, 358 (2004).  The plaintiff must prove "by a preponderance of the evidence that (1) [s]he would have recovered a judgment in the action against the main defendant, (2) the amount of that judgment, and (3) the degree of collect[a]bility of such judgment."  Ibid. (quoting Hoppe v. Ranzini, 158 N.J. Super. 158, 165 (App. Div. 1978)).

Generally, plaintiffs in professional malpractice cases must present expert testimony to prove the defendant failed to satisfy the applicable standard of practice.  Rosenberg v. Cahill, 99 N.J. 318, 325 (1985).  "Because the duties a lawyer owes to his client are not known by the average juror, a plaintiff will

usually have to present expert testimony defining the duty and explaining the breach." Stoeckel v. Twp. of Knowlton, 387 N.J. Super. 1, 14 (App. Div. 2006). But under the common knowledge doctrine, no expert is required and the jury itself may "supply the applicable standard of care and . . . obviate the necessity for expert testimony . . . ." Ibid. (quoting Sanzari v. Rosenfeld, 34 N.J. 128, 141 (1961)). The common knowledge doctrine only applies to the "unusual" situation where "the carelessness of the defendant is readily apparent to anyone of average intelligence and ordinary experience." Ibid.

"In rare cases, expert testimony is not required in a legal malpractice action where the duty of care to a client is so basic that it may be determined by the court as a matter of law." Sommers v. McKinney, 287 N.J. Super. 1, 10 (App. Div. 1996). Expert testimony is not needed to prove causation in legal malpractice cases where "the attorney's legal malpractice and the client's loss is so obvious that the trier of fact can resolve the issue as a matter of common knowledge." Id. at 11. The duty must be "so basic that it may be determined by the court as a matter of law." Brizak, 239 N.J. Super. at 429. But where judgment calls are necessary, such as evaluating "the adequacy of [an] investigation or [an] opinion[,]" the jury normally must hear expert testimony. Aldrich v. Hawrylo, 281 N.J. Super. 201, 214 (App. Div. 2015).

8

In Sommers, this court applied the common knowledge doctrine where the plaintiff alleged she accepted a low settlement offer "because her attorney inadequately prepared the case, failed to submit a legal argument to support [plaintiff's] . . . claim and misrepresented the state of the case to [plaintiff]." Sommers, 287 N.J. Super. at 11. This court noted that a jury would not need to "speculate whether [the attorney] selected the appropriate authorities to advance plaintiff's legal position or to evaluate [the attorney's] judgment in recommending a settlement offer to [plaintiff]." Ibid. In other words, specific expert testimony was not needed to support the allegation that the attorney did not work on plaintiff's case and misrepresented the strength of the case to encourage a "far inferior" settlement. Ibid.

Plaintiff's position is that defendants' failure to sue the defendants primarily responsible for decedent's death renders this a common knowledge case without need for expert testimony. It seems self-evident, as explained in the judge's cogent analysis, that the average juror cannot be expected to know which defendants should be named by an attorney in a complicated medical malpractice case. In this case, decedent, who was seventy-two years old and had a prior medical history including diabetes, was treated in two facilities by several providers. The common knowledge doctrine would not have aided jurors

in knowing how the attorneys failed in fulfilling their obligations. This is generally true in legal malpractice cases. See Stoeckel, 387 N.J. Super. at 14. In this case, there simply is absolutely no basis to assume the jurors could have independently determined both the standard of care and the manner in which defendants deviated from that standard. See ibid. Because the common knowledge doctrine is not applicable, plaintiff should have submitted an expert report. Failure to do so warranted the grant of summary judgment to defendants.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1730-19