**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3858-21

SIMON COULL,

     Plaintiff-Appellant,

v.

JAMIE VON ELLEN,

     Defendant-Respondent.

_____

Submitted November 6, 2023 – Decided December 4, 2023

Before Judges Marczyk and Chase.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-3996-21.

Simon Coull, appellant pro se.

Jamie K. Von Ellen, respondent pro se.

PER CURIAM

Plaintiff Simon Coull appeals pro se from the trial court's June 24, 2022 order dismissing his complaint against his former attorney defendant, Jamie Von Ellen, based on his failure to comply with the Affidavit of Merit Statute.

N.J.S.A. 2A:53A-26 to -29. Following our review of the record and the applicable legal principles, we affirm in part, vacate in part, and remand for further proceedings consistent with this opinion.

I.

Plaintiff retained defendant on December 19, 2013 to represent him in a Family Part post-judgment application to decrease his support obligations to his former wife and children. Plaintiff was a self-employed cinematographer at the time of defendant's retention, so it was necessary to have an accounting expert analyze his financial status before moving for a modification of alimony and child support. Once a report was obtained, defendant filed the appropriate motion and succeeded in convincing the court that a prima facie case of changed circumstances had been established. Pursuant to the Family Part judge's decision, plaintiff and his former wife were required to engage in discovery. Plaintiff's former wife retained her own accounting expert who made findings regarding plaintiff's income which contradicted those of plaintiff's expert.[1]

After expert reports were exchanged, the parties attended mediation. However, mediation failed as the parties' experts were unable to agree on

---

[1] Plaintiff filed a separate action against his former wife's accounting expert which is the subject of a separate appeal. Coull v. Eisner Amper and Klein, No. A-2226-21.

A-3858-21

plaintiff's income, including the nature and extent of his personal expenses paid through his business. Thereafter, the court set a trial date for October 2015. Defendant notes plaintiff's case was complex for various reasons, including his self-employment status, the condition of his books, and the disagreement of the experts. Defendant further cites additional factors impacting the complexity of the case, including delays caused by opposing counsel and plaintiff's former wife, as well as the court's schedule and the tension between plaintiff and his former spouse. Defendant asserts the case would have been costly to try, and the complexity of the case made it impossible to guarantee an outcome at trial that would have justified the time and cost of the trial itself.

Shortly before trial, plaintiff advised defendant of his willingness to accept the settlement offer that had been extended by his former spouse.[2] Plaintiff went to defendant's office on October 16, 2015, and signed a consent order reflecting the agreed-upon terms, and defendant forwarded same to opposing counsel. After plaintiff signed the consent order, the parties agreed to several minor modifications, and plaintiff returned to defendant's office to sign a revised version on or about December 21, 2015. Thereafter, the final consent

[2] In an effort to assist plaintiff, defendant offered that in the event plaintiff chose to accept the settlement terms that were presented on the eve of trial, she would reduce plaintiff's bill by $12,000.

order was submitted to the court. Defendant contends plaintiff was successful in significantly reducing his obligations to his former wife and children without the necessity of a trial, albeit not as much as he was hoping to achieve.[3] As discussed more fully below, plaintiff paints a very different portrait as to the circumstances surrounding the settlement. He alleges defendant threatened him and stated he only signed the agreement because he feared for his safety.

The parties had no additional contact after 2017. However, plaintiff continued to litigate the Family Part case as a self-represented litigant. Specifically, in 2019, plaintiff filed another post-judgment motion requesting a further reduction of his support obligations. The application was denied by the trial court, and we subsequently affirmed the trial court.

In October 2021, shortly after our decision, plaintiff filed a complaint against defendant. Therein, he alleged defendant "abused her position of trust and client duty of care" by exerting "undue influence" over him during the 2015 matter. In an addendum to his complaint, plaintiff asserts:

> On or around October 13[,] 2015[,] I discovered the attorney representing me in a contentious litigation

---

[3] Defendant also explains: "Subsequent to the entry of the December 22, 2015 [c]onsent [o]rder, on or about September 21, 2017, [p]laintiff returned to [her firm] for further legal advice. . . . At that time, he met with [an associate, and because her firm] was sympathetic to [p]laintiff's circumstances, [it] did not require him to pay for [these] services . . . ."

A-3858-21

had been contacted by the other part[y's] expert in an effort to get me to accept an offer from the other party.

I had been protesting the expert [opinion] throughout the litigation as they appeared to be clearly grossly incorrect and had been asking to sit down face to face with the expert and go through how he arrived at his figures as they did not make sense and made several inaccurate statements.

My Attorney Jamie Von Ellen in a phone call then used her position to threaten me stating "I can do some very bad things to you" in relation to me not accepting the offer that was . . . based on the expert[']s calculations. It was clear in the recorded call that I did not want to accept the offer but felt I had no choice.

Also throughout litigation Ms[.] Von Ellen refused to act on abusive discovery and litigation practice by the other part[y's] attorney which included canceling numerous agreed events at the very last minute delaying discovery.

Plaintiff further alleged he suffered a loss of income, legal fees, emotional distress, and physical injury.

Plaintiff subsequently moved to amend his complaint, and defendant cross-moved to dismiss based on plaintiff's failure to provide an affidavit of merit. On February 18, 2022, the court granted plaintiff's motion to amend his complaint and extended the time to serve an affidavit of merit until March 12, 2022. Plaintiff's amended complaint alleged lack of fiduciary duty, conflict of interest, witness tampering, and defendant using undue influence to force

5

plaintiff to sign the settlement agreement. Plaintiff failed to provide an affidavit of merit.

Defendant subsequently moved to dismiss plaintiff's complaint with prejudice based on his failure to serve an affidavit of merit in May 2022. In response, plaintiff asserted an affidavit of merit was not required because the nature of his claims was rooted in various torts other than malpractice stemming from defendant's alleged threat and that his claims fall within the "common knowledge" exception to the affidavit of merit requirement.

In June 2022, the court held oral argument. Defendant's attorney explained "the basic elements of the statute apply here and requires dismissal of the complaint." Specifically, counsel explained defendant is an attorney and "the claims . . . plaintiff is seeking to pursue against her arise from and relate to the exercise of her professional duties." Counsel also addressed plaintiff's argument about the "common knowledge" exception and argued that "these issues all involve complex . . . issues related to how matrimonial attorneys are charged with representing their clients under the professional standards . . . and . . . must be proved by expert testimony."

Plaintiff countered this is "not really a professional complaint" because it happened on a phone call "when I tried to talk to my attorney. It was a threat

. . . where I stated I didn't want to proceed to sign anything. I also stated I was suspecting something was going on here." In describing the threat, plaintiff alleged defendant said: "if you don't do this some very bad things can happen to you." According to plaintiff, this prevented him from going to court and moving forward. "[Y]ou know, this isn't professional, this is a personal threat to prevent me from having my day in court . . . ."

Two weeks later, the trial judge rendered an oral decision. The judge explained he was dismissing the complaint based on plaintiff's failure to produce an affidavit of merit, not only because plaintiff failed to file an affidavit of merit after exhausting the maximum 120-day period provided under the statute, but the judge also found that plaintiff "cannot overcome the fundamental character of the attorney[-]client relationship underlying the claim [and] the plaintiff cannot transform a claim of professional malpractice into something other than what was alleged . . . simply to avoid the statutory requirements [of N.J.S.A. 2A:53A-27]." Ultimately, the court found plaintiff did not comply with the affidavit of merit statute and did not meet the common knowledge exception because "[t]he complaint of the plaintiff directly involves the duties that [defendant] had with [plaintiff] as an attorney." The trial court entered an order

dated June 24, 2022, granting defendant's motion and dismissing plaintiff's complaint with prejudice. Thereafter, plaintiff appealed.

II.

Before us, plaintiff argues "[a]n affidavit of merit is not required in this matter as the complaint is not about the standard of work performed or professional services and therefore [is] not a professional malpractice complaint." More particularly, plaintiff asserts, "[t]his is very clearly a personal threat between two people and not the subject of the performance of [defendant's] work" and thus cannot fall under malpractice. According to plaintiff, the threat was conveyed outside of a professional relationship, similar to how if an attorney assaulted their client, which would not fall under the affidavit of merit statute. Plaintiff contends that because the conduct was not in the context of professional services, "a[n] [a]ffidavit of [m]erit serves no purpose in this complaint and is not required[.]"

Defendant contends plaintiff's claims arise from the attorney-client relationship, and the provisions of N.J.S.A. 2A:53A-27 are clearly implicated. Accordingly, defendant maintains plaintiff's failure to serve an affidavit of merit warranted a dismissal of the complaint.

A-3858-21

We review de novo motions to dismiss based on failures to comply with the affidavit of merit statute, in part because they involve a legal determination, specifically "the statutory interpretation issue of whether a cause of action is exempt from the affidavit of merit requirement," and in part because they involve a dismissal of a complaint for failure to state a claim. Cowley v. Virtua Health Sys., 242 N.J. 1, 14-15 (2020). We also note that we conduct a de novo review of a decision on a motion to dismiss under Rule 4:6-2(e), applying the same standard as the motion court. Frederick v. Smith, 416 N.J. Super. 594, 597 (App. Div. 2010). We therefore "owe no deference to the . . . judge's conclusions[.]" Mac Prop. Grp. LLC & The Cake Boutique LLC v. Selective Fire & Cas. Ins. Co., 473 N.J. Super. 1, 16 (App. Div. 2022) (quoting State ex rel. Comm'r of Transp. v. Cherry Hill Mitsubishi, Inc., 439 N.J. Super. 462, 467 (App. Div. 2015)).

In determining whether to grant a motion to dismiss under Rule 4:6-2(e), "the complaint's allegations are accepted as true with all favorable inferences accorded to plaintiff." Ibid. A court must consider only "the legal sufficiency of the facts alleged on the face of the complaint[,]" Nostrame v. Santiago, 213 N.J. 109, 127 (2013) (quoting Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989)), and must search the complaint "in depth and with

9

liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of a claim[.]" Mac Prop., 473 N.J. Super. at 16 (quoting Printing Mart, 116 N.J. at 746).

N.J.S.A. 2A:53A-27 states:

> In any action for damages for personal injuries, wrongful death or property damage resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation, the plaintiff shall, within [sixty] days following the date of filing of the answer to the complaint by the defendant, provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices. The court may grant no more than one additional period, not to exceed [sixty] days, to file the affidavit pursuant to this section, upon a finding of good cause.
>
> [N.J.S.A. 2A:53A-27.]

The affidavit of merit statute was enacted by the Legislature to "curtail the filing of frivolous malpractice actions" by requiring plaintiffs to "make a threshold showing that their claim is meritorious . . . ." Hyman Zamft and Manard, L.L.C. v. Cornell, 309 N.J. Super 586, 593 (App. Div. 1998) (quoting In re Hall, 147 N.J. 379, 391 (1997)). As the Supreme Court has explained, the statute "was designed as a tort reform measure and requires a plaintiff in a

malpractice case to make a threshold showing that the claims asserted are meritorious." Yagnik v. Premium Outlet Partners, LP, 467 N.J. Super. 91, 107 (App. Div. 2021) (quoting Galik v. Clara Maass Med. Ctr., 167 N.J. 341, 350 (2001)). "It is designed to weed out frivolous lawsuits at an early stage and to allow meritorious cases to go forward." Ibid.

The Supreme Court recently explained "[t]he failure to provide an affidavit or its legal equivalent is 'deemed a failure to state a cause of action,' and this Court has 'construed the statute to require dismissal with prejudice for noncompliance . . . .'" Cowley, 242 N.J. at 16 (first quoting N.J.S.A. 2A:53A-29, then quoting A.T. v. Cohen, 231 N.J. 337, 346 (2017)).

An affidavit of merit is required in all actions (1) filed against a licensed person and (2) in which proof of the claim "require[s] proof of a deviation from the professional standard of care for that specific profession." Mortg. Grader, Inc. v. Ward & Olivo, L.L.P., 225 N.J. 423, 443 (2016) (quoting Couri v. Gardner, 173 N.J. 328, 341 (2002)). "If such proof is required, an affidavit of merit shall be mandatory for that claim, unless [an exception applies]." Ibid.

We initially observe that plaintiff's complaints are not models of clarity. Although plaintiff argues he is not asserting a malpractice claim, his initial complaint begins by alleging "MALPRACTI[C]E." He further contends

11                                                                                    A-3858-21

defendant abused her "duty of care" and failed to "act on abusive discovery and litigation practice" by his adversary. The amended complaint asserts undefined claims of breach of fiduciary duty and conflicts of interest. Accordingly, defendant was understandably under the belief plaintiff was, at least in part, asserting professional negligence claims and therefore moved to dismiss based on plaintiff's failure to serve an affidavit of merit. Moreover, the court correctly dismissed the complaint to the extent plaintiff was asserting a legal malpractice action. Accordingly, we affirm that aspect of the court's decision dismissing any and all professional negligence claims. This does not end our inquiry.

Plaintiff asserts the common knowledge exception applies in this case as "it is easily understood by a jury what a threat is and is not required for an expert to give a technical explanation beyond the [jury's] understanding." We are unpersuaded by this argument.

It is well-settled that in order to establish legal malpractice, a plaintiff will typically have to present expert testimony to prove the essential elements to show "(1) the existence of an attorney-client relationship creating a duty of care upon the attorney; (2) the breach of that duty; and (3) proximate causation." Stoeckel v. Twp. of Knowlton, 387 N.J. Super. 1, 14 (App. Div. 2006) (quoting Conklin v. Hannoch Weisman, 145 N.J. 395, 416 (1996)). An expert is

12

necessary because the duty a lawyer owes to a client is not known by the average juror. Ibid. An exception to this requirement is the common knowledge exception. The exception "applies where 'jurors' common knowledge as lay persons is sufficient to enable them, using ordinary understanding and experience, to determine a defendant's negligence without the benefit of the specialized knowledge of experts.'" Hubbard v. Reed, 168 N.J. 387, 394 (2001) (emphasis added) (quoting Est. of Chin v. Saint Barnabas Med. Ctr., 160 N.J. 454, 469 (1999)).

Plaintiff makes clear he is not asserting a professional negligence claim against defendant. Rather, it appears he is asserting an intentional tort claim based on defendant's alleged threats that caused him to enter into the settlement agreement against his wishes.[4] That is, plaintiff is not asserting defendant deviated from accepted practices, but that she threatened his "wellbeing" and his claims "cannot be considered a professional matter." Plaintiff explains "[t]his is very clearly a personal threat . . . and not the subject of the performance of

---

[4] Despite plaintiff's claims he was threatened and coerced to enter into the settlement agreement, he never moved to vacate the agreement in the family court. In fact, as noted above, plaintiff later sought to reduce his support obligations under the agreement, but there is no indication he ever asserted the agreement itself was invalid because it was not entered into voluntarily.

[defendant's] work" and does not fall under malpractice. Because plaintiff concedes this is not a negligence matter, the common knowledge doctrine is not applicable because the doctrine applies in the context of negligence claims—not in the context of intentional torts.

Plaintiff's complaint contains allegations defendant threatened him by saying she "can do some very bad things to [him] in relation to [him] not accepting the offer . . . ." The amended complaint further alleges lack of fiduciary duty, witness tampering, defendant using her position to exert undue influence upon him, and forcing him to sign an agreement against his wishes.[5] He argues defendant threatened his well-being and he feared for his safety, and therefore he signed the settlement agreement.[6] Plaintiff also appears to argue defendant breached a fiduciary duty by making the threat.

The court did not squarely address this threat claim. We are convinced this allegation does not require an affidavit of merit. Under the circumstances,

---

[5] Witness tampering is a violation of the criminal code, not a civil cause of action. N.J.S.A. 2C:28-5. Moreover, plaintiff's brief also references the affirmative defenses of duress, under N.J.S.A. 2C:2-9, and criminal coercion, under N.J.S.A. 2C:13-5. These are also not civil causes of action.

[6] Plaintiff claims there was another threat six months after he signed the settlement agreement, but that was apparently made by his ex-wife's expert, not defendant.

though inartfully drafted, plaintiff's amended complaint appears to assert a fundament of a cause of action involving the alleged threat that is separate and apart from any professional negligence claims dismissed by the court based on plaintiff's failure to provide an affidavit of merit. Because we must accept allegations in the complaint as true with all favorable inferences accorded to plaintiff, we are constrained to remand on this issue.

However, plaintiff has not clearly articulated the precise civil cause of action being asserted. It appears plaintiff is asserting an intentional tort. If that is the case, it should be made clear. Defendant and the trial court should not be left to speculate as to what specific cause of action plaintiff is alleging. Moreover, plaintiff's amended complaint does not contain the addendum attached to the first complaint, and it is not clear if he is still making those same allegations. On remand, plaintiff must file a second amended complaint which will be the controlling pleading for plaintiff. Therein, plaintiff must clearly state the civil cause of action (not criminal offenses or defenses to contract formation) he seeks to advance against defendant in order to put defendant on notice of the precise claim being asserted.[7] Plaintiff shall file the amended complaint within

---

[7] Plaintiff also argued on appeal the statute of limitations should be tolled under extraordinary circumstances due to plaintiff being threatened, which prevented

15

thirty days of the issuance of this decision. We leave to the court's sound discretion whether to initially consider further motion practice after plaintiff files the second amended complaint or whether to proceed with discovery.

Affirmed in part, vacated in part, and remanded for further proceedings consistent with this opinion.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

the underlying family action from being fully adjudicated. The trial court did not address the statute of limitations because it does not appear it was even raised by plaintiff. We decline to address the issue here for the first time on appeal. Ins. Co. of N. Am. v. Gov't Emps. Ins. Co., 162 N.J. Super. 528, 537 (App. Div. 1978). We do not foreclose plaintiff from making this argument on remand if defendant moves to dismiss based on the statute of limitations, depending on the claims asserted in the second amended complaint plaintiff is now required to file.