709 A.2d 305

NORA LUCZAK, AS ADMINISTRATRIX AD PROSEQUENDUM FOR THE HEIRS-AT-LAW OF JOSEPH LUCZAK, DECEASED, AS ADMINISTRATRIX OF THE ESTATE OF JOSEPH LUCZAK, DECEASED, AND INDIVIDUALLY, PLAINTIFF–APPELLANT, v. TOWNSHIP OF EVESHAM, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued telephonically April 3, 1998—Decided May 12, 1998.

Before Judges LONG, STERN and KLEINER.

*Jeffrey A. Weiner* argued the cause for appellant (*Newman & Weiner*, attorneys; *Mr. Weiner*, on the brief).

*Robert Aaron Greenberg* argued the cause for respondent (*Taylor, Boguski & Greenberg*, attorneys; *Mr. Greenberg*, on the brief).

The opinion of the court was delivered by

KLEINER, J.A.D.

Plaintiff, Nora Luczak, appeals from a directed verdict granted to defendant, Evesham Township, in plaintiff's wrongful death

action brought against defendant under the Tort Claims Act, *N.J.S.A.* 59:1–1 *et seq.* (The Act). Defendant was granted a directed verdict based upon plan/design immunity, pursuant to *N.J.S.A.* 59:4–6.

Plaintiff brought this action against defendant alleging wrongful death after her husband was killed while driving on a road in Evesham Township on January 29, 1989. She alleged that her husband died as a result of a dangerous condition at the intersection of Kettle Run Road and Borton's Road, public roads owned and controlled by defendant. She asserted that defendant was responsible for her husband's death because it had actual and constructive notice of the dangerous condition for a sufficient time prior to the fatal accident and was palpably unreasonable in failing to correct it.

After protracted discovery, defendant filed a motion for summary judgment based upon, among other things, plan/design immunity, which was denied except for the count in plaintiff's complaint regarding defendant's failure to construct or erect ordinary traffic signals, signs or markings under *N.J.S.A.* 59:4–5. Discovery then continued and eventually a jury trial commenced on October 15, 1996. After five days of trial, plaintiff rested and defendant moved for a directed verdict based upon plan/design immunity, *N.J.S.A.* 59:4–6, which was granted on November 13, 1996.

It was conceded at trial that Kettle Run Road, previously an old stagecoach road, was never formally designed. Defendant submitted no evidence concerning when and how the road was upgraded from a stagecoach road to a paved roadway over which cars travelled at least up to fifty miles per hour. There was evidence that certain short-term improvements, suggested in a 1984 report and a 1985 report by a traffic consultant hired by defendant to study Township traffic problems, were made to Kettle Run Road, including the posting of signs indicating an upcoming curve. Defendant, however, never implemented the long-term solutions suggested in the 1984 and 1985 reports. In fact, the Township

Manager, Burton Conway, testified at his deposition, which was read at trial, that while he was Township Manager from 1984 to 1989, the Township had no long-range plans for the rehabilitation of Kettle Run Road which would have included straightening the curve and adding shoulders, as suggested by the consultant's two reports. He also could not recall anyone within the Township discussing the condition of Kettle Run Road even after the reports were generated.

The trial judge granted defendant's directed verdict motion, concluding that, by paving Kettle Run Road, defendant in effect designed the road, and therefore was entitled to immunity for any injuries proximately caused by the design. He stated:

Clearly, this was a decision by the municipality at its highest level, the mayor, council level as to what to do in connection with Kettle Run Road.

And I determine, as a matter of law, that their decision to act or not act or to do certain things was, in fact, discretionary....

This was a road that came into being that none of us know exactly. But at some point in time, it was decided by the municipality to improve that road. The decision to improve it was really a decision, in effect, to build a road because all that existed was a dirt path or dirt road.

It is not for the judiciary to second guess as the cases have talked about decision making on the part of the municipality....

I am absolutely convinced based upon the arguments that I have heard that this is a design slash improvement situation....

On appeal, plaintiff argues that the trial judge erred in granting defendant a directed verdict based on plan/design immunity because defendant failed to prove that the specific design or plan of Kettle Run Road and/or improvements thereto were the subject of prior approval or prior approved standards. We agree and now reverse.

Defendant presented no evidence at trial in support of its directed verdict motion based on plan/design immunity. It simply relied upon its position, as it does on appeal, that defendant "designed" Kettle Run Road when the road was paved and, therefore, we must assume that a specific plan/design was approved by a proper authority resulting in the road's paving. Defendant reasoned that because the Township "inherited" the

road as a stagecoach road and, after the 1984 traffic study was done recommending both short- and long-term improvements, the Township, "in whatever fashion, either administratively or departmentally," performed the short-term improvements, "design immunity, based upon those recommendations, attaches to the action or inaction of the Township Council."

This court employs the same standard on review as the trial court did in deciding defendant's motion for a directed verdict. *See Rule* 4:37–2(b). This court must reverse the trial court's grant of a directed verdict if, accepting as true all evidence supporting the party opposing the motion and according her the benefit of all favorable inferences, reasonable minds could differ. *Dolson v. Anastasia,* 55 *N.J.* 2, 5, 258 *A.*2d 706 (1969).

Defendant maintains that it is immunized from suit by *N.J.S.A.* 59:4–6. That section states:

> Neither the public entity nor a public employee is liable ... for an injury caused by the plan or design of public property, either in its original construction or any improvement thereto, where such plan or design has been approved in advance of the construction or improvement by the Legislature or the governing body of a public entity or some other body or a public employee exercising discretionary authority to give such approval or where such plan or design is prepared in conformity with standards previously so approved.

> The official Comment to that section explains that plan-or-design immunity is intended to protect the independence of the government's discretionary decisions and to protect the State from unlimited financial responsibility.... Summing up the "thesis of discretionary immunity," the Comment states that "a coordinate branch of government should not be second-guessed by the judiciary for high level policy decisions."

> [*Manna v. State,* 129 *N.J.* 341, 352–53, 609 *A.*2d 757 (1992) (citation omitted).]

Defendant had the burden of pleading the affirmative defense of plan/design immunity and the burden of proof. *Id.* at 351, 609 *A.*2d 757 (citations omitted).

> Application of plan-or-design immunity turns on whether the public entity has approved the feature in question so as to immunize it from challenge. As we stated in *Thompson [v. Newark Housing Auth.,* 108 *N.J.* 525, 531 *A.*2d 734 (1987) ], "[o]ur case law has accepted ... [the] premise that the defect that causes the injury must be in the plans before immunity is conferred." In other words, "the public entity must establish that an approved feature of the plan sufficiently addressed the condition that is causally related to the accident."

[*Id.* at 353, 609 *A.2d* 757 (citation omitted); *see also Birchwood Lakes Colony Club, Inc. v. Borough of Medford Lakes,* 90 *N.J.* 582, 599, 449 *A.2d* 472 (1982) ("[A]lthough liability cannot be based on the inadequacy of the design or plan, immunity from liability for an independent affirmative act . . . is afforded in the first instance only for an approved feature of the plan or design.").]

A public entity, however, need not show that a feature of the plans (such as the installation of guardrails or paving an entire intersection) "was specifically considered and rejected." *Thompson, supra,* 108 *N.J.* at 537, 531 *A.2d* 734; *see Manna, supra,* 129 *N.J.* at 358, 609 *A.2d* 757 ("[I]mmunity for an original design does not fail because alternative options regarding the feature of concern . . . were not considered in the original plans."). Rather, a public entity must offer evidence that it had considered the general condition about which a plaintiff complains in formulating the original plan or design. *See Manna, supra,* 129 *N.J.* at 358, 609 *A.2d* 757; *see also Costa v. Josey,* 83 *N.J.* 49, 59, 415 *A.2d* 337 (1980) ("[I]mmunity is contingent upon proof that discretion was actually exercised at [the planning] level by an official who, faced with alternative approaches, weighed the competing policy considerations and made a conscious choice.").

Here, the trial court improperly directed a verdict in defendant's favor because defendant presented no evidence that it or any of its departments or employees approved any plan or design concerning the condition of Kettle Run Road about which plaintiff complains or made any other decision concerning Kettle Run Road. *See Manna, supra,* 129 *N.J.* at 357, 609 *A.2d* 757; *Thompson, supra,* 108 *N.J.* at 536–37, 531 *A.2d* 734.

In *Thompson, supra,* the original plans for the building which contained the alleged dangerous condition about which the plaintiff complained were not available, and there was no evidence that the general cause of the plaintiff's injury, fire safety or lack thereof, was ever discussed by the proper authorities in originally constructing the building. 108 *N.J.* at 536–37, 531 *A.2d* 734. The Supreme Court held that the defendant therefore was not entitled to plan/design immunity. *Id.* at 534–35, 531 *A.2d* 734.

Similarly, the Supreme Court in *Costa, supra,* held that the defendant lacked the necessary factual support for summary judgment under section 59:4–6 of the Act, where its only evidence in support of plan/design immunity was an affidavit containing a person's recollection of conferences, held over 20 years before the accident, discussing the original design of the public property about which the plaintiff complained. 83 *N.J.* at 52–53, 415 *A.*2d 337.

Additionally, this court in *Daniel v. State,* 239 *N.J.Super.* 563, 571 *A.*2d 1329 (App.Div.), *certif. denied,* 122 *N.J.* 325, 585 *A.*2d 343 (1990), held that there was a substantial factual issue presented regarding whether a governmental authority actually approved a plan which was the basis for the defendant's claim of plan/design immunity. *Id.* at 597–98, 571 *A.*2d 1329. One piece of evidence was post-dated and the work order for the project at issue "was merely stamped with a facsimile of [a governmental authority's] signature. [That person] was not produced as a witness, and the project documents are suggestive of the thesis that he did not actually see them when he allegedly approved the plans." *Id.* at 598, 571 *A.*2d 1329. This court added: "The State's evidence was even less convincing with respect to [another] project. No written instructions were given. [A public employee on the job] characterized the project as a 'seat of our pants job.' " *Ibid.*

Like the defendant in *Thompson,* the plans for the original construction of Kettle Run Road are apparently unavailable, and there is no evidence that the plan or design of the intersection of Kettle Run Road and Borton's Road, including the sharp curve, was ever discussed by defendant or its political subdivisions. *See Thompson, supra,* 108 *N.J.* at 536–37, 531 *A.*2d 734. Defendant here offers even less evidence in support of its entitlement to plan/design immunity than the defendants in *Costa* and *Daniel,* asserting only that we must assume that any action taken by the Township, such as paving or the erection of signs, was the result of highly discretionary activity.

Defendant offered no evidence of any basic policy decision by any Township employee or body, with the proper authority to make such choices, regarding the original construction of Kettle Run Road, and thus "there is no decision to be second-guessed." *Thompson, supra,* 108 *N.J.* at 538, 531 *A.2d* 734. *N.J.S.A.* 59:4–6 cannot be construed to accord immunity, as the trial court did here, based upon a mere assumption that governmental decision making actually occurred, *and* that such discretionary activity resulted in a plan or design that was causally related to the decedent's accident. *See id.* at 534, 531 *A.2d* 734 (emphasis added). That provision requires more than mere assumptions about the policy decisions of public entities.

Defendant also contends that it is entitled to plan/design immunity for the short-term improvements made to Kettle Run Road, as suggested by the traffic consultant's 1984 and 1985 reports. Defendant specifically asserts:

It must be that the governing body of Evesham Township considered the short and long term recommendations of the Horner report and as is undisputed in this case implemented the short term recommendation and therefore acted in a discretionary (non-directed fashion) [sic] upon them. This is true because, as stated, it is undisputed that the short term improvements were in place as of the date of the Luczak accident. Therefore, since that decision and the implementation of those decisions are one in [sic] the same for purposes of the statute, the process is discretionary and therefore immune.

Defendant assumes, as did the trial court, that because signs were mounted at or near the accident site, defendant exercised its discretionary authority to act or not to act, and thus was entitled to immunity under *N.J.S.A.* 59:4–6.

Defendant's contention is without merit. Defendant failed to show that any of the "improvements" made to Kettle Run Road were "approved in advance of the ... improvement[s] by ... the governing body of a public entity or some other body or a public employee exercising discretionary authority to give such approval" or that the improvements were "prepared in conformity with standards previously so approved." *N.J.S.A.* 59:4–6. In fact, Mr. Conway indicated that while he was Township Manager from 1984 to 1989, the Township had no long-range plans for the rehabilita-

tion of Kettle Run Road which would have included straightening the curve and adding shoulders, as suggested by the consultant's two reports. He also could not recall anyone within the Township discussing the condition of Kettle Run Road even after the 1984 and 1985 reports were produced. Defendant offers nothing more than the simple fact that the signs were put up.

Additionally, we reject defendant's suggestion that any type of discretion on its part in implementing the traffic consultant's suggestions for short-term, as opposed to the long-term, improvements, is subject to immunity. Defendant's decision to implement all of the short-term recommendations, with one exception, and not the long-term recommendations, is immune only if that choice was not "palpably unreasonable" within the meaning of *N.J.S.A.* 59:2–3d. A fact question was presented as to this issue by plaintiff's proofs. Thus, a directed verdict in defendant's favor based on plan/design immunity at this point was therefore improper.

This does not mean, however, that a defendant can never prevail based on plan/design immunity before presenting its own case at trial. For example, a defendant can file a motion for summary judgment based on plan/design immunity (as defendant did here, but which was denied), using as support for its motion documentation regarding prior approval of a specific plan or design addressing the alleged dangerous condition. A defendant may also seek a directed verdict at the close of the plaintiff's case (as defendant did here), establishing its entitlement to immunity through its cross-examination of the plaintiff's witnesses and/or by trial exhibits.

We also reject plaintiff's claim that defendant had a duty to maintain Kettle Run Road by paving Borton's Road and installing guardrails along the intersection's curve. Such actions are improvements, rather than "maintenance," as they "were not part of the original design of the [Kettle Run Road], and adding them does much more than return the [road] to the status quo." *Manna, supra,* 129 *N.J.* at 358, 609 *A.*2d 757. "[T]he State has

[no] duty to undertake design improvements. That fact cannot be avoided by labeling the desired improvement a 'maintenance' activity." *Ibid.*

Reversed and remanded.