**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3785-16T1

LORETTA WARNOCK,

      Plaintiff-Appellant,

v.

MARGULIES WIND, A
PROFESSIONAL CORPORATION,
ROBERT MARGULIES,
individually, and JACK
WIND, individually,

      Defendants-Respondents.

_____

Argued September 27, 2018 – Decided November 27, 2018

Before Judges Simonelli, O'Connor and Whipple.

On appeal from Superior Court of New Jersey, Law Division, Morris County, Docket No. L-2606-12.

Jason A. Rindosh argued the cause for appellant (Bedi Rindosh, attorneys; Loretta Warnock, on the pro se briefs).

Patrick J. McCormick argued the cause for respondents (Hardin, Kundla, McKeon & Poletto, PA, attorneys; Patrick J. McCormick, on the brief).

PER CURIAM

Plaintiff, Loretta Warnock, appeals from a March 20, 2017 order precluding her expert from testifying, dismissing her legal malpractice claim against defendants, and awarding defendants a total of $353,682.76 in unpaid attorney's fees, expert fees, and accrued interest. We affirm in part, reverse in part, and remand for the reasons discussed herein.

I.

We discern the following facts from the record. Plaintiff was one of Willard Jacobs Sr.'s seven children. In 2003, Willard Sr. executed a power of attorney entrusting plaintiff's older brother, Thomas Jacobs, with his financial affairs. When Willard Sr. died in 2005, Thomas and his brother, Willard Jr., were named co-executors of the estate. On December 28, 2007, Thomas and Willard Jr. filed a verified complaint for settlement of and a first formal account of executors. On March 19, 2008, they filed an amended complaint.

On April 23, 2008, plaintiff and her brother Lawrence, initially represented by a different law firm, filed exceptions to the accounting. On July 3, 2008, Thomas filed an amended tax return on behalf of the estate that revealed

he had secreted $282,489 in assets, including $118,028 in cash, a $66,000 loan to himself, and $30,660 in foreign gold currency. This prompted plaintiff to subpoena Thomas's bank records from Affinity Credit Union, where Thomas held six accounts. Plaintiff argued there was reason to believe Thomas secreted more estate assets. The probate court quashed the subpoena but allowed the Thomas's counsel to redact bank records so plaintiff could only view deposits into the accounts. The probate judge ruled he would hold a hearing to determine whether the unredacted records should be produced only if plaintiff's counsel found "questionable records." Soon after, plaintiff fired her first set of lawyers.

In December 2009, plaintiff retained defendants. Plaintiff agreed to pay defendants a $20,000 retainer and 10% of any award she received over $400,000. She also agreed to the individual defendants' hourly rates of $450 and $400, respectively. Their fee agreement also stated unpaid bills would be subject to a 12% annual interest rate.

In consultation with defendants, plaintiff retained Rufino Fernandez, an attorney and business valuation appraiser, to perform a forensic accounting of the estate's assets to determine if Thomas had hidden any additional funds. On April 13, 2010, plaintiff filed exceptions to a new accounting filed by the executors. She objected to the calculation of cash assets and personal property,

the failure to account for certain bank transactions made by Willard Sr. from 2002 to 2004, and the fees claimed for estate administration. Meanwhile, on July 20, 2010, Fernandez issued an initial report identifying $506,443.14 in unaccounted withdrawals from Willard Sr.'s accounts but was unable to link the withdrawals to Thomas. Defendants did not call Fernandez as a trial witness because he ultimately found all estate assets were accounted for upon receiving further documentation.

On September 10, 2010, plaintiff, still convinced Thomas hid assets from the estate, moved to adjourn the trial date and extend discovery. Plaintiff contended she was still entitled to Thomas's unredacted bank records so Fernandez could examine them for potential deposits of estate property. The probate judge denied the request as untimely in light of the approaching trial date and because plaintiff had access to the redacted records for some time without making an application for unredacted versions.

Prior to the probate trial, the parties agreed to stipulate certain facts. On December 22, 2010, the probate judge issued a written decision finding from November or December 2003 until Willard Sr.'s death on May 17, 2005, Thomas controlled all of Willard Sr.'s assets, signed his checks, and collected all of his mail. Plaintiff's exceptions "bore fruit" because amended accountings revealed

a potential $282,489 in secreted assets. However, the court found plaintiff did not prove Thomas had hidden additional assets from the estate.

Accordingly, the probate court awarded plaintiff what it determined were reasonable attorneys' fees and requested additional submissions totaling the amount of fees and costs billed. Plaintiff sought $174,057.65 for defendants' services and $134,909.18 for her original attorneys' services. In a February 24, 2011, supplemental letter opinion, the probate judge awarded plaintiff $40,000 in fees and costs based on her successful exception, but denied fees and costs incurred after July 31, 2008, because subsequent exceptions did not result in the discovery of additional secreted assets.

Soon thereafter, the parties to the estate litigation were engaged in settlement discussions to reach a resolution. However, plaintiff's relationship with defendants began to deteriorate and on July 4, 2011, she informed defendants she would not sign the settlement agreement. On July 17, 2011, plaintiff fired defendants.

Defendants sent plaintiff a statement of services and advised she was entitled to request a fee arbitration. Defendants billed plaintiff for $192,655.63 in attorney's fees in addition to Fernandez's fee of $36,935. Plaintiff declined arbitration and on October 19, 2012, filed a complaint alleging defendants

negligently represented her, did not make certain pre-trial motions, did not adequately prepare for trial, and over-billed her. Defendants countersued for unpaid fees.

On November 6, 2013, plaintiff served a subpoena on Affinity Credit Union again seeking Thomas's unredacted bank records. Both defendants and Thomas moved to quash the subpoena. The trial judge granted the motion to quash, because the probate judge already ruled on the discovery issue and discovery of the unredacted bank records was not reasonably related to plaintiff's malpractice claim against defendants.

The malpractice trial began on February 27, 2017. Plaintiff testified and called both defendants to testify. Fernandez testified that prior to 2010, he was unable to trace $506,443.14 in withdrawals from Willard Sr.'s accounts. However, after he issued his 2010 report, he received additional documentation that allowed him to account for the previously unknown withdrawals. Even though he could not trace the origin of some of the deposits in Thomas's redacted bank records, Fernandez concluded to do so was unnecessary. Fernandez was satisfied there were no unaccounted withdrawals from estate assets and even if an asset's location was unknown he could not assume the asset was stolen.

A-3785-16T1

In furtherance of her malpractice claim, plaintiff retained Anthony Ambrosio, an attorney, to provide an expert's report. Ambrosio's report focused on the probate judge's discovery order requiring only disclosure of redacted bank records and the potential for review upon a showing of questionable records by plaintiff. Ambrosio interpreted the probate court's statement as a guarantee it would conduct an in camera review, rather than laying the parameters for future discovery requests. According to Ambrosio, even though defendants hired a forensic accountant to examine the redacted records, their failure to make continued application for the unredacted records before trial was negligent, leaving defendants unprepared for trial.

Ambrosio presented a supplemental expert's report, opining defendants committed malpractice by not appealing the denial of plaintiff's motion to adjourn the trial date and extend discovery. He speculated "the owner of the account could be made to reveal to the [c]ourt the source of the funds unrelated to the estate of the decedent that were reflected as deposits in the account." He based this conclusion on $1.8 million worth of deposits redacted from Thomas's bank records that remained unchallenged. Because Thomas previously hid assets, Ambrosio opined the court could have inferred the $1.8 million were secreted estate assets. Moreover, Ambrosio opined, if the probate court ordered

broader discovery of the unredacted documents, defendants' forensic accountant could have located more assets. Finally, Ambrosio opined defendants were negligent in failing to "correct" the probate court's decision to set the cut-off date for attorney's fees as July 31, 2008. Ambrosio concluded plaintiff suffered damages of $506,437[1] in assets missing from the estate, $153,031 in legal fees and expenses, and $2.5 million in assets sold prior to the decedent's death but not included in the estate.

After Fernandez's testimony, the trial judge conducted an N.J.R.E. 104 hearing to determine whether Ambrosio should be permitted to testify during the trial. The trial judge focused on two points from Ambrosio's expert report: the $506,437 in previously unaccounted for withdrawals and $1.8 million in redacted deposits to Thomas's accounts. Ambrosio's opinion was unsupportable because he was unaware Fernandez ultimately accounted for the $506,443.14 in withdrawals. Ambrosio also acknowledged plaintiff was the source of the $1.8 million figure and he never personally conducted a forensic accounting.

---

[1]   Fernandez's report concluded there was $506,443.14 in unaccounted withdrawals, not $506,437. In his testimony, Ambrosio rounded this figure down to $506,000. Presumably when he mentioned $506,437, Ambrosio was referring to the $506,443.14 figure that Fernandez arrived at in his 2010 report.

After considering Ambrosio's testimony, the trial judge precluded him from testifying, finding he offered a net opinion. The judge explained Ambrosio's theory that defendants were negligent for not obtaining unredacted bank records ignored the content of the probate court's discovery order, which instructed defendants to move for revelation of unredacted records only if they found "questionable entries." Fernandez had not found such entries. The judge also rejected Ambrosio's assumption defendants were entitled to an in camera review of the records. Thus, the judge found Ambrosio's opinion "illogical and speculative."

The judge also rejected Ambrosio's damages calculation. Ambrosio cited no evidence demonstrating production of the unredacted records would have shown probative evidence of hidden assets. Ambrosio was unaware Fernandez continued to receive documentation after he issued his report and ultimately was able to account for the $506,443.14 in withdrawals. Additionally, Ambrosio's reliance on plaintiff's theory the $1.8 million in redacted deposits were estate assets was too speculative to put to a jury. Finally, the trial court rejected Ambrosio's criticism of defendants' trial strategy as a net opinion.

After rejecting her expert's testimony, the trial judge concluded plaintiff could not prove her malpractice claim and entered a verdict in favor of

defendants. Plaintiff presented no defense to defendants' counterclaim for fees. Therefore, the trial judge entered an order for judgment dismissing plaintiff's claim and awarded defendants $229,590.63 in unpaid fees and $124,092.13 in accrued interest, for a total of $353,682.76. This appeal followed.

II.

We review the grant or denial of a motion for involuntary dismissal de novo. Smith v. Millville Rescue Squad, 225 N.J. 373, 397 (2016) (citing ADS Assocs. Grp., Inc. v. Oritani Sav. Bank, 219 N.J. 496, 511 (2014)). "[D]ismissal is appropriate when no rational jury could conclude from the evidence that an essential element of the plaintiff's case is present." Pressler & Verniero, Current N.J. Court Rules, cmt. 2.1 on R. 4:37-2 (2018). We apply the same standard as the trial court in reviewing the grant or denial of a motion for a directed verdict. Frugis v. Bracigliano, 177 N.J. 250, 269 (2003) (citing Luczak v. Twp. of Evesham, 311 N.J. Super. 103, 108 (App. Div. 1998)).

"Ordinarily, the competency of a witness to testify as an expert is remitted to the sound discretion of the trial court. Absent a clear abuse of discretion, an appellate court will not interfere with the exercise of that discretion." Carey v. Lovett, 132 N.J. 44, 64 (1993) (citing Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 411 (1960)).

At the heart of this case is plaintiff's assertion defendants failed to properly trace the assets of the estate. After the trial court concluded plaintiff's expert offered a net opinion, plaintiff could not establish a prima facie case. See Pressler & Verniero, cmt. 2.3 on R. 4:37-2.

We first address whether the trial judge abused his discretion by precluding plaintiff's expert witness from testifying because his opinion constituted an inadmissible net opinion. Under N.J.R.E. 703, an expert's opinion must "be grounded in 'facts or data derived from (1) the expert's personal observations, or (2) evidence admitted at the trial, or (3) data relied upon by the expert which is not necessarily admissible in evidence but which is the type of data normally relied upon by experts.'" Townsend v. Pierre, 221 N.J. 36, 53 (2015) (quoting Polzo v Cty. of Essex, 196 N.J. 569, 583 (2008)). "Under the 'net opinion' rule, an opinion lacking in [a] foundation and consisting of bare conclusions unsupported by factual evidence is inadmissible. The rule requires an expert to give the why and wherefore of his or her opinion, rather than a mere conclusion." Rosenberg v. Tavorath, 352 N.J. Super. 385, 401 (App. Div. 2002).

In a legal malpractice case, an expert must rely upon standards accepted by the legal community and not his or her own personal views. Carbis Sales, Inc. v. Eisenberg, 397 N.J. Super. 64, 79 (App. Div. 2007) (citing Kaplan v.

Skoloff & Wolfe, P.C., 339 N.J. Super. 97, 103 (App. Div. 2001)). "[I]f an expert cannot offer objective support for his or her opinions, but testifies only to a view about a standard that is 'personal,' it fails because it is a mere net opinion." Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 373 (2011). Plaintiff argues Ambrosio's conclusions were based on precedent and the Rules of Professional Conduct (R.P.C.), and were reasonably inferred from the facts of the underlying litigation. After reviewing the record, we disagree.

The trial judge's conclusions that Ambrosio lacked a basis from which he could testify about plaintiff's alleged damages, that his opinion was speculative, and that his opinion lacked sufficient information regarding the proximate of plaintiff's alleged loss are supported by the record. Ambrosio ignored defendants' and Fernandez's efforts, as well as their inability to find questionable entries in the Affinity records and he did not explain how the lack of an earlier motion to obtain the unredacted records harmed plaintiff. Neither Ambrosio nor a forensic accountant offered any calculation of plaintiff's damages and Ambrosio did not demonstrate the evidentiary value of having Fernandez testify in the underlying trial. Ambrosio did not explain how defendants negatively impacted plaintiff's award for counsel fees. Accordingly, the trial judge found Ambrosio's testimony on proximate cause and recoverable damages was

deficient and constituted a personal opinion. We do not consider the trial court's preclusion of Ambrosio an abuse of discretion. Thus, we also reject the argument the trial judge erred by dismissing plaintiff's complaint with prejudice.

Plaintiff did not demonstrate the essential elements of a legal malpractice claim, specifically (1) the existence of an attorney-client relationship creating a duty of care upon the attorney; (2) the breach of that duty; and (3) proximate causation. McGrogan v. Till, 167 N.J. 414, 425 (2001). Without a reliable expert report, plaintiff did not show what injuries were suffered as a proximate consequence of the attorney's breach of duty. 2175 Lemoine Ave. Corp. v. Finco, Inc., 272 N.J. Super. 478, 487-88 (App. Div. 1994).

A client asserting a legal malpractice claim must typically offer expert testimony. Stoeckel v. Twp. of Knowlton, 387 N.J. Super. 1, 14 (App. Div. 2006). However, expert testimony may not be necessary if there is an obvious causal link between the attorney's negligence and a client's loss. 2175 Lemoine Ave. Corp., 272 N.J. Super. at 490. "On the other hand, if the adequacy of an investigation or the soundness of an opinion is the issue, a jury will usually require the assistance of an expert opinion." Sommers v. McKinney, 287 N.J. Super. 1, 11 (App. Div. 1996). To prove actual loss, "the client must demonstrate that he or she would have prevailed, or would have won materially

more . . . but for the alleged substandard performance." Lerner v. Laufer, 359 N.J. Super. 201, 221 (App. Div. 2003).

Rule 4:37-2(b) provides:

> After having completed the presentation of the evidence on all matters other than the matter of damages (if that is an issue), the plaintiff shall so announce to the court, and thereupon the defendant, without waiving the right to offer evidence in the event the motion is not granted, may move for a dismissal of the action or of any claim on the ground that upon the facts and upon the law the plaintiff has shown no right to relief. Whether the action is tried with or without a jury, such motion shall be denied if the evidence, together with the legitimate inferences therefrom, could sustain a judgment in plaintiff's favor.

A defendant need not wait for the conclusion of plaintiff's case to move for dismissal where the latter's case requires the support of expert testimony. Pressler & Verniero, cmt. 2.3 on R. 4:37-2. Here, plaintiff could not support her legal malpractice claim without expert testimony on liability and damages and, therefore, her complaint was properly dismissed once Ambrosio's reports were found to be net opinions.

Plaintiff's remaining arguments are reviewed for plain error because they were not raised before the trial court. R. 2:10-2. Each are unavailing because plaintiff failed to establish she suffered a loss caused by defendants' conduct. Plaintiff cannot sustain a cause of action even with new assertions of legal

14

malpractice because, without expert testimony, she is left with speculative, conclusory allegations.

In sum, plaintiff did not establish a prima facie case for legal malpractice because she has not offered expert testimony that would have allowed a jury to find in her favor.

## III.

We next address whether the trial judge erred by granting judgment for defendants on their counterclaim for fees. Plaintiff argues the court erred by entering judgment in favor of defendants because she did not have an opportunity to contest the reasonableness of defendants' fees and "[d]efendants' counterclaim for fees . . . should still have [been] heard on the question of their reasonableness." However, significantly, in addressing defendants' motion for summary judgment, plaintiff stated she was not contesting the reasonableness of defendants' fees. Thus, we review plaintiff's arguments for plain error. See R. 2:10-2.

"A motion for judgment, stating specifically the grounds therefor, may be made by a party either at the close of all the evidence or at the close of the evidence offered by an opponent." R. 4:40-1. "[I]n deciding a R[ule] 4:40-1 motion for judgment the court must accept as true all the evidence which

supports the position of the non-moving party, according him or her the benefit of all legitimate inferences, and if reasonable minds could differ, the motion must be denied." RSB Lab. Servs., Inc. v. BSI, Corp., 368 N.J. Super. 540, 555 (App. Div. 2004).

When an attorney seeks to collect against a client for unpaid fees, the attorney bears the burden of making a prima facie showing his or her fees were reasonable and fair. Alpert, Goldberg, Butler, Norton & Weiss, P.C. v. Quinn, 410 N.J. Super. 510, 529 (App. Div. 2009); see also Cohen v. Radio-Elecs. Officers Union, 146 N.J. 140, 155 (1996) (noting "an attorney's freedom to contract with a client is subject to the constraints of ethical considerations and our supervision").

An attorney may establish his or her compliance with R.P.C. 1.5(a) by certifying all of the services performed were both reasonable and necessary in representing the client. See, e.g., Gruhin & Gruhin, P.A. v. Brown, 338 N.J. Super. 276, 281 (App. Div. 2001) (holding an attorney's unchallenged certification regarding the reasonableness and necessity of his services was sufficient to support the entry of summary judgment in favor of the attorney).

Here, defendants offered no evidence to support a finding that their fees were reasonable and fair. Although a certification asserting such fees were

reasonable and fair is sufficient to prevail on a motion for summary judgment, defendants neither testified at trial nor offered a certification to this effect.

Further, a motion for judgment must be made "at the close of all the evidence or at the close of the evidence offered by an opponent." R. 4:40-1. Here, the court entered judgment on defendants' counterclaim before plaintiff rested. We consider this error harmless based on all the circumstances.

However, without evidence regarding the reasonableness and necessity of the work performed, the trial court's entry of judgment constituted plain error because, absent evidence defendants' fees were reasonable and fair, a factfinder could have found in plaintiff's favor. Such error is capable of producing an unjust result as judgment was entered in defendants' favor, notwithstanding their failure to carry their burden of proof. We reverse the trial court to the extent it did not hold defendants to their burden, and we remand with instructions to assess the reasonableness of defendants' fees consistent with this opinion.

Affirmed in part, reversed in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

17                                                                      A-3785-16T1