**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0305-18T4

JENNIFER S. INGENITO,

     Plaintiff-Appellant,

v.

BOROUGH OF ATLANTIC
HIGHLANDS,

     Defendant-Respondent,

and

COMPASS CONSTRUCTION,
INC., and BIRDSALL
ENGINEERING, INC.,

     Defendants.

_____

          Argued October 10, 2019 – Decided July 13, 2020

          Before Judges Nugent and Suter.

          On appeal from the Superior Court of New Jersey, Law
          Division, Monmouth County, Docket No. L-2179-11.

Vincent P. Manning argued the cause for appellant (Manning Caliendo & Thomson, PA, attorneys; Vincent P. Manning, of counsel and on the briefs).

Jason R. Hawrylak argued the cause for respondent (Wisniewski & Associates LLC, attorneys; Jason R. Hawrylak, on the brief).

PER CURIAM

Plaintiff, Jennifer Ingenito, appeals the summary judgment dismissal of her personal injury complaint, which alleged she fell from her bike and sustained serious injuries as she rode off a wooden bridge on public property of defendant, the Borough of Atlantic Highlands ("Borough"). Because we conclude genuine issues of material fact should have precluded summary judgment—mostly because the scant record leaves many critical facts disputed and unresolved—we reverse and remand.

I.

A.

Plaintiff filed a three-count personal injury complaint in May 2011. She alleged she was injured while bicycling through a scenic trail in the Borough. Her accident happened when, while "coming off a bridge which connects the trail to the Atlantic Highlands Harbor Commission property, . . . she was caused

to fall off her bicycle due to a steeply sloped section of asphalt pavement on said trail[.]"

In the complaint's first count, she alleged a cause of action against the Borough under the Tort Claims Act (TCA), N.J.S.A. 59:1-1 to 12-3, for designing, constructing, managing, supervising, and maintaining a dangerous condition of public property. In the second count, she alleged defendant Compass Construction, Inc. ("Compass") negligently designed, installed, and constructed the bridge and area around it. In the third count, she alleged defendant Birdsall Engineering, Inc. ("Birdsall") negligently planned and designed the portion of the trail and bridge where she fell.

Defendants filed answers but discovery was delayed when Birdsall filed for bankruptcy and the trial court dismissed plaintiff's complaint without prejudice pending completion of the bankruptcy proceedings. The court reinstated plaintiff's complaint in January 2018. Defendants moved for summary judgment. The trial court granted summary judgment to the Borough and Compass but denied summary judgment to Birdsall. Plaintiff and Birdsall later settled, after which plaintiff appealed the order granting the Borough summary judgment.

A-0305-18T4

B.

The summary judgment motion record, construed in the light most favorable to plaintiff as the non-moving party, Petro-Lubricant Testing Labs., Inc. v. Adelman, 233 N.J. 236, 256 (2018), includes the following facts. Plaintiff was injured in May 2009 while bicycling on the Bayshore Trail ("Trail") in the Borough. The Trail is over 8000 feet long, is constructed mostly of asphalt, and runs in a general east-west direction. A wooden bridge spans a section of the Trail.

The westerly end of the bridge abuts an asphalt portion of the Trail. There, "the side flare has a gradient of over twenty-five (25) percent," which according to plaintiff's engineering expert, "is quite steep." The expert asserted this steeply sloped side flare created a hazardous and unsafe condition to walkers and those on bicycles. The expert opined the construction and maintenance of this section of the Trail is contrary to specific general safety practices and rules prevailing in the industry, which he cited in his report. Although "the trail leading up to [the] bridge, with [the] exception of [the] side flare, is protected on one side with fencing and on the opposite side, a grassed area[,]" there was "no type of guard to prevent persons from riding over" the sloped side flare.

A-0305-18T4

Plaintiff's expert noted the side flare exceeded the permissible gradient and was missing a guardrail. He also noted a dedication ceremony was conducted near the site of the accident, so the "steeply pitched surface, as noted, was certainly observed and some type of guard could easily have been erected to protect persons." He opined that relocation of the Trail or a "field change" without re-engineering to account for a different location "violated engineering standards and caused this bridge to be located at a place where it created the hazard which caused plaintiff's injuries."

Plaintiff described the accident during her deposition. Riding in a westerly direction, as she neared the bridge, she saw "a gentleman and a young girl" on the bridge, to her right, straddling their bicycles. She believed they were waiting for a young boy, who was approaching them. The young boy was approaching from the opposite direction she was riding. The boy appeared to be nervous as he saw plaintiff riding over the bridge. She had to make a sharp left turn to avoid hitting the young boy. Unaware of the severely pitched side flare, she fell from her bike into a ditch and was severely injured.

The engineer who signed off on the plans for the Trail was Katherine Elliott, who worked for Birdsall. She testified during her deposition she "inherited" the project from a previous engineering firm when the Borough

appointed Birdsall as the Borough engineer. When she inherited the project, the plans were "construction ready." She made some minor revisions—none in the vicinity of plaintiff's accident—and signed off on them.

Elliott testified in her deposition: "No, [the Trail] was not constructed as shown on the plans." She explained the bridge was constructed at a location different from that shown on the plans. It was constructed further to the north. She did not observe how its construction differed from the plans until after the Trail was constructed.

According to Elliott, the bridge was relocated from its original designed site because its final location provided for a more scenic view of the Sandy Hook Bay "and also the original design location ran not only the bridge but part of the trail to the active drainage site and it would have conflicted with dredging operations." The recommendation was made to Elliott by a Borough official at a pre-construction meeting that took place in the summer of 2008. She made no further plans for the move because there were construction details already on the plan.

Elliott further explained the asphalt placed toward the drainage ditch, described as the side flare, was not part of the accessible route. The side flare was capped "to prevent the exposed soil from eroding and to provide drainage,

6

basically positive drainage off the ramp itself as the shoulder and as a soil table measure." The asphalt section that continued off of what Elliott described as the "accessible route" and into the drainage ditch was not part of the original design, nor was it a part of the design added by Elliott. Rather, according to Elliott, another Birdsall employee, Corey Germano, made the decision to asphalt the portion that sloped into the drainage ditch. In fact, according to Elliott, Germano made the decision to asphalt the sloped portion into the drainage ditch before even consulting with Elliott about the decision.

Elliot attended a ribbon-cutting ceremony when the Trail was complete. She testified the ceremony took place in the vicinity where the accident later occurred. Pressed, she testified the accident took place "right where the ribbon cutting occurred." According to Elliott, after plaintiff's accident occurred "a planter had been placed at the corner by the [B]orough."

In support of its summary judgment motion, the Borough submitted a certification of its Business Administrator. The certification does not appear to be based on personal knowledge. The Business Administrator certified that when the Borough council approved the plan and design of the Trail prepared by Birdsall, "the proposition of moving the [T]rail as shown on the plans a short distance north was presented to the Council." The Business Administrator

added, "[a]fter reviewing the plans and documents, the Council approved the plan and design of the Trail with the knowledge that the Trail would be moved further north than was depicted so as to avoid a dredge pit area in the location where the [T]rail was original[ly] planned to be built."

The Business Administrator averred the approval is codified in Resolution 068-2008. This resolution was adopted on April 9, 2008. Although the Business Administrator states in his certification that "Birdsall Engineering informed the Borough that no new plans needed to be constructed to show the move further north because the plans and construction details already called for what was necessary to construct the trail[,]" the Business Administrator does not identify the Birdsall employee who made such representations, state when they were made, or state where they were made.

The Borough also presented the deposition testimony of Corey Germano, Birdsall's "construction observer" and the construction supervisor for the Trail project. Germano, by his own testimony, "was not privy to any plans." He received plans the day of the pre-construction meeting. He testified construction was done in accordance with the plan that was prepared by Elliott and signed by her.

The trial court granted summary judgment to the Borough. The court determined the Borough had established design immunity. The court further determined plaintiff had failed to establish a genuinely disputed issue of material fact as to whether the Borough's property was in a dangerous condition that caused plaintiff's injuries.

II.

On appeal, plaintiff argues the court erred because genuinely disputed issues of material fact existed as to both issues. Plaintiff contends the court overlooked the requirement that the specific defective condition of public property that causes injury must have been encompassed with an approved design. Plaintiff also argues the court's determination that the Borough had no notice, actual or constructive, of the dangerous condition, was erroneous because it was in part created by the Borough.

The Borough argues the court correctly determined the Borough had design immunity because even though the bridge was moved, details of the actual bridge's construction were provided in the plans. Acknowledging the "'defect' in question . . . is the alleged steep slope of the side flare of the bridge[,]" the Borough insists the trial court correctly found "all evidence of record indicates that that side flare was designed and constructed in accordance

with the approved plans."  The Borough also argues plaintiff cannot establish the Borough had either actual or constructive notice of the dangerous condition.

III.

We review a trial court's order granting summary judgment under settled standards.  A trial court's order granting summary judgment is entitled to no "special deference" by an appellate court and is subject to de novo review.  Cypress Point Condo. Ass'n v. Adria Towers, L.L.C., 226 N.J. 403, 415 (2016) (citation omitted).  Appellate courts "review the competent evidential materials submitted by the parties to identify whether there are genuine issues of material fact and, if not, whether the moving party is entitled to summary judgment as a matter of law."  Bhagat v. Bhagat, 217 N.J. 22, 38 (2014) (citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)).  Here, we conclude genuine issues of material fact preclude the grant of summary judgment.

A.

We first address design immunity.  The TCA provides:

> Neither the public entity nor a public employee is liable under this chapter for an injury caused by the plan or design of public property, either in its original construction or any improvement thereto, where such plan or design has been approved in advance of the construction or improvement by the Legislature or the

10

> governing body of a public entity or some other body or a public employee exercising discretionary authority to give such approval or where such plan or design is prepared in conformity with standards previously so approved.
>
> [N.J.S.A. 59:4-6(a).]

The Borough was required to establish plan or design immunity. "It is well established that the burden is on the public entity both to plead and prove its immunity under our Act." Wymbs v. Twp. of Wayne, 163 N.J. 523, 539 (2000) (quoting Kolitch v. Lindedahl, 100 N.J. 485, 497 (1985)). Moreover, plan or design immunity turns on whether "the public entity has approved the feature in question so as to immunize it from challenge." Manna v. State, 129 N.J. 341, 353 (1992). "In other words, 'the public entity must establish that an approved feature of the plan sufficiently addressed the condition that is causally related to the accident.'" Ibid. (quoting Thompson v. Newark Hous. Auth., 108 N.J. 525, 536 (1987)). Although a public entity need not show each feature of a plan was specifically considered and rejected, it must "offer evidence that it had considered the general condition about which a plaintiff complains in formulating the original plan or design." Luczak v. Twp. of Evesham, 311 N.J. Super. 103, 109 (App. Div. 1998).

A-0305-18T4

Here, the Borough did not produce the plans Elliott signed. Nor did the Borough have someone testify that asphalting the steep slope adjacent to the Trail and bridge—and not providing a protective barrier—was specified or considered before the plan was approved by the Borough's 2008 resolution. The Borough produced no evidence that the bridge in its originally designed location was near a drainage ditch, or that such ditch was required to be constructed as part of the design plan. And of course, such testimony would have been contradicted by Elliott's testimony. Even if the Borough Council had considered moving the bridge when it adopted its resolution in April 2008, Elliott was unaware the governing body was considering moving the bridge until a pre-construction job meeting later that summer.

The Business Administrator's certification is incompetent because it does not establish it was based on personal knowledge as required by Rule 1:6-6. But even if it is considered, it at most creates a factual dispute to be resolved by the jury. The Business Administrator avers that when the Borough Council approved the Birdsall plans, "the proposition of moving the trail as shown on the plans a short distance north was presented to the Council." The "presenter's" identity is not disclosed, so no one can determine from the certification who allegedly made the presentation.

A-0305-18T4

Further along in his certification, the Business Administrator identifies the actor as "Birdsall Engineering," who also allegedly informed the Borough no new plans would be needed to show the move because the plan details previously called for what was necessary to construct the Trail. Elliott, who signed the plans, testified she did not know about the move until a pre-construction meeting in the summer of 2008. Germano, who oversaw the construction, had nothing to do with the plans until he was provided a copy at the pre-construction meeting.

In any event, even if the Business Administrator's certification is given any credence, it is contradicted by Elliott and thus, at best, creates a factual dispute about whether the Borough Council considered the relocation of the bridge when it adopted the 2008 resolution. Furthermore, as previously noted, the specific dangerous condition—the steeply sloped, unguarded side flare—had never been considered by Elliott by April 2008 when the Borough Council adopted the resolution. Paving the slope was a decision allegedly made later by Germano.

In short, based on the proofs on the summary judgment motion record, there was at minimum a genuinely disputed issue of material fact concerning

design immunity.  The Borough was not entitled to design immunity as a matter of law.

## B.

There were also genuinely disputed issues of material fact as to whether the Borough's property was in a dangerous condition when plaintiff fell.  To establish a public entity's liability for a dangerous condition of property under the TCA, a plaintiff must establish:

> that the property was in dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:
>
> a.    a negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or
>
> b.    a public entity had actual or constructive notice of the dangerous condition under section 59:4-3 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.
>
> Nothing in this section shall be construed to impose liability upon a public entity for a dangerous condition of its public property if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable.
>
> [N.J.S.A. 59:4-2.]

The Borough argues plaintiff's proofs were insufficient to create a genuinely disputed issue of material fact concerning two elements of this cause of action. Specifically, the Borough argues there is no evidence from which a fact finder could conclude the Borough had actual or constructive notice of the dangerous condition, and there is no evidence from which a fact finder could conclude the Borough's inaction was palpably unreasonable. We disagree.

First, a fact finder could conclude it was reasonably foreseeable that an unguarded, steeply-sloped side flare to a ditch, adjacent to a recreational trail and bridge, created a risk to bicyclists and joggers of precisely the type of accident that befell plaintiff. Actual and constructive notice are defined in the TCA:

> a.    A public entity shall be deemed to have actual notice of a dangerous condition within the meaning of subsection b. of section 59:4-2 if it had actual knowledge of the existence of the condition and knew or should have known of its dangerous character.
>
> b.    A public entity shall be deemed to have constructive notice of a dangerous condition within the meaning of subsection b. of section 59:4-2 only if the plaintiff establishes that the condition had existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character.
>
> [N.J.S.A. 59:4-3.]

The facts plaintiff developed on the motion record create a factual dispute as to whether the Borough had actual or constructive notice. Plaintiff established through Elliott's testimony that the ribbon-cutting ceremony took place at the location where plaintiff fell from her bike. A fact finder could infer from that testimony that public officials were present at the site and observed the condition. There is a question of fact as to whether the proximity of the unguarded slope to the bridge and path created a readily discernible, obvious risk of danger, and there is also a question of fact as to whether Borough officials knew or should have known of its dangerous character. These issues should be decided by the fact finder.

Plaintiff also argues the Borough created the dangerous condition by directing the relocation of the bridge to the site where it was constructed. We reject this argument. That decision did not create the paved slope to the ditch adjacent to the bridge and asphalt path.

The Borough next argues its failure to take action to protect against the dangerous condition was not palpably unreasonable. "Palpable unreasonableness is a question of fact." Vincitore v. N.J. Sports & Exposition Auth., 169 N.J. 119, 130 (2001) (citing Furey v. Cty. of Ocean, 273 N.J. Super. 300, 313 (App. Div. 1994)). Thus, if the fact finder determines the paved slope

was a dangerous condition of the Borough's property, it must also determine whether it was palpably unreasonable not to take any action to guard against the danger.  Ibid.

Reversed and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0305-18T4